Filed 12/21/16

# CERTIFIED FOR PARTIAL PUBLICATION[*]

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FIVE

CHRISTINA M. SAGONOWSKY,

      Plaintiff and Appellant,                  A142866/A143234

      v.                                    (San Francisco Super. Ct.
                                               No. FDI03755091)

CURTIS KEKOA, JR.,

      Defendant and Respondent.

_____/

In the latest chapter of this lengthy and acrimonious marital dissolution — which the trial court dubbed a "litigation war" — the court partially granted Curtis Kekoa Jr.'s motion for Family Code section 271[1] sanctions (section 271 motion). The court sanctioned Christina M. Sagonowsky $767,781.23, which included: (1) $500,000 for her "relentless and culpable conduct" in "driv[ing] up the cost of the litigation" and "purposefully frustrat[ing] the final settlement of" the case; (2) $180,000 for causing a reduction in the sale price of real property awarded to Kekoa in the dissolution judgment; and (3) $45,000 in interest on Kekoa's attorney fees bill. The court also partially granted Kekoa's motion for rents and security deposits (rents motion) Sagonowsky received on properties awarded to Kekoa in the dissolution judgment and ordered Sagonowsky to pay Kekoa $28,510.80.

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II and III.

[1] All undesignated statutory references are to the Family Code.

Sagonowsky appeals, challenging the sanctions award on several grounds. She also contends the court erred by granting the rents motion; the court violated the Americans with Disabilities Act of 1990 (42 U.S.C., § 12101 et seq., (ADA)) by denying her requests for accommodation and holding a hearing on various motions in her absence; and that Kekoa was not entitled to attorney fees because he used the services of an attorney who previously represented Sagonowsky.

We reverse in part and affirm in part. We conclude sanctions awarded pursuant to section 271 are limited to "attorney's fees and costs" and, as a result, the court erred by imposing sanctions of $500,000 for Sagonowsky's conduct in increasing the cost of the litigation and frustrating settlement, and by imposing sanctions of $180,000 for causing a reduction in the sale price of real property awarded to Kekoa in the dissolution judgment, because these amounts were untethered to attorney fees and costs incurred by Kekoa. In all other respects, we affirm.[2]

## FACTUAL AND PROCEDURAL BACKGROUND

This case has a lengthy and complicated procedural history. We provide an overview, summarizing only those facts relevant to the issues raised on appeal.

Sagonowsky and Kekoa married in 1992. They owned several San Francisco rental properties, including properties on Ashbury Street, Filbert Street, and two on Greenwich Street. In 2003, Sagonowsky petitioned for dissolution. The marriage was dissolved in 2005 as to status only. Sagonowsky managed the San Francisco rental properties until the parties agreed on a division of marital property. In 2006, Sagonowsky inherited approximately $2 million in real property from her mother. In

---

[2]    We grant Kekoa's unopposed request for judicial notice of documents relating to lawsuits Sagonowsky filed against Kekoa and his attorneys, and against various state court judges. (Evid. Code, §§ 452, 453, 459.) We deny Kekoa's July 22, 2015 request to file a motion for monetary sanctions against Sagonowsky for filing a frivolous appeal (Code Civ. Proc., § 391.7). The trial court sealed documents relevant to the ADA issue. The sealed documents and transcripts were filed under seal in this court. (Cal. Rules of Court, rule 8.46(c).) We have reviewed the sealed materials and describe them in general terms to maintain their confidentiality.

2008, Sagonowsky recorded lis pendens (Code Civ. Proc., § 405.20) against the Ashbury and Filbert Street properties.

In a 2010 judgment, the court awarded Kekoa the Ashbury and Filbert properties and a property on Ainakea Way in Honolulu. Sagonowsky received five properties, including the Greenwich properties. The judgment provided all "final transfers of the real property shall occur by December 15, 2010."

*Sagonowsky's Refusal to Comply with the Judgment*

In early 2011, Sagonowsky appealed from the judgment. While her appeal was pending, Sagonowsky refused to comply with the judgment and sought to delay her obligation to transfer management and control of the Ashbury and Filbert properties to Kekoa.[3] In early 2011, Kekoa filed the rents motion, described in more detail below, to recover approximately $45,000 in rents and security deposits Sagonowsky received on the Ashbury and Filbert properties. In February 2011, the court transferred control of the Ashbury and Filbert properties to Kekoa and ordered Sagonowsky to deliver to Kekoa "all funds" she received after December 15, 2010 for managing those properties.

In December 2012, this court dismissed Sagonowsky's appeal after she failed to file an opening brief, despite receiving two extensions. The California Supreme Court denied Sagonowsky's petition for review. Following this court's 2013 remittitur, Sagonowsky refused to sign deeds to the Ashbury, Filbert, and Ainakea properties. From April to June 2013, Kekoa's attorney, Casimir Wilson, sent Sagonowsky five letters asking her to sign proper deeds transferring title to Kekoa. Sagonowsky did not respond, forcing Kekoa to move to have the trial court execute the grant deeds and to appoint the

---

[3] During this time period, Sagonowsky filed several lawsuits against Kekoa and his then attorney regarding the Greenwich properties. According to the court, Sagonowsky's "idea of how to proceed is . . . she should get everything she wants, including things not addressed in the [j]udgment . . . [t]hese claims are repeatedly raised and [Sagonowsky] takes the further step of filing other lawsuits raising these very same issues" against Kekoa and others. The court referred to Sagonowsky's conduct as a "reign of terror against Kekoa by holding up his property and further delaying [the dissolution] proceedings with frivolous requests and filings."

3

clerk as Sagonowsky's agent to execute the deeds transferring the properties.[4] Kekoa also moved to expunge the lis pendens Sagonowsky had filed on the Ashbury and Filbert properties, and for attorney fees and costs.

In 2013, the trial court granted Kekoa's request to expunge the lis pendens and for attorney fees, and to appoint the court clerk as agent to execute the deeds for Ashbury, Filbert and Ainakea.

### The Rents Motion and Wilson's Motion for a Protective Order

In 2011, Kekoa filed the rents motion, and the court ordered the parties to present evidence on Sagonowsky's failure to transfer money she received arising from her management of the Ashbury and Filbert properties. In particular, the court ordered Sagonowsky to provide evidence regarding loan payments, utilities, and taxes between December 15, 2010 and February 9, 2011, and evidence supporting her request for property management fees for those properties. Sagonowsky did not file any pleadings before the court-ordered deadline. Instead — and shortly before the hearing on the rents motion — Sagonowsky claimed she suffered from a disability preventing her from attending the hearing. The court continued the hearing several times, eventually until the resolution of Sagonowsky's appeal from the judgment.[5]

The court set an October 2013 hearing date for the rents motion. Sagonowsky filed a written opposition but did not appear at the hearing. At the conclusion of the hearing, the court determined Sagonowsky had wrongfully withheld $58,028.75 on the Ashbury and Filbert properties from December 15, 2010 to February 9, 2011.

---

[4]     In 2011, Sagonowsky deposited the deeds with the superior court to stay enforcement of the judgment on appeal (Code Civ. Proc., § 917.3), but the deeds were defective because they lacked proper notary acknowledgment. Wilson claimed Sagonowsky, then a licensed California real estate broker, knew the deeds were defectively acknowledged and could not be recorded, even after the appeal from the judgment was final.

[5]     In late 2011, the court sanctioned Sagonowsky $35,000 for her "repeated failure to comply with the mandate of . . . section 271."

4

Sagonowsky successfully petitioned this court for writ relief, and the trial court vacated the order and set a new hearing date for the rents motion.[6]

In late 2013, Sagonowsky retained attorney Bradley White.[7] White served Wilson with a deposition subpoena seeking Wilson's testimony on Kekoa's entitlement to rents and deposits. When White refused to withdraw the subpoena, Wilson moved for a protective order and for monetary sanctions. The day before the protective order hearing, Sagonowsky moved to disqualify the judge pursuant to Code of Civil Procedure section 170.6. The court granted the challenge, continued the hearing on the motion for protective order to late January 2014, and reassigned the matter to Judge Anne-Christine Massullo.

On the morning of the continued hearing, Sagonowsky served a "notice of unavailability due to disability" indicating she would be "unavailable for all purposes . . . including but not limited to receiving notices of any kind, appearing in court, responding to ex parte applications, motions or attending depositions" until late April 2014. The doctor's note attached to the unavailability notice, however, did not recommend such broad limitations — it simply stated Sagonowsky's symptomatology precluded "prolonged sitting, prolonged weight-bearing, and other physical activities." While Sagonowsky claimed to be unable to receive notices or respond to pleadings, she was actively pursuing at least two other lawsuits against Kekoa in San Francisco and San Mateo Superior Courts.

---

[6]     In 2009, a division of this court declared Kekoa a vexatious litigant. (*Sprague v. Kekoa* (Dec. 8, 2009, A122018) [nonpub. opn.].) Sagonowsky routinely challenged Kekoa's motions and the trial court's rulings for noncompliance with the requirements of the vexatious litigant statute (Code Civ. Proc., § 391.7). In three instances, this court issued alternative writs, and in 2014, we "reluctantly again intervene[d]" regarding the trial court's initial ruling on the rents motion.

[7]     The court observed Sagonowsky and White are engaged, and held joint interest in several properties. According to the court, White appeared to provide legal services and advice to Sagonowsky when she claimed to be acting in propria persona. White had "emotional outbursts during . . . proceedings, threatened the Court," and took "legal positions that were frivolous and intended solely for the purpose of delay."

The court stayed the protective order hearing because neither Sagonowsky nor White appeared, and because it was not clear whether Sagonowsky was seeking an accommodation due to a disability. Eventually, the court held a hearing and granted the motion for a protective order. White agreed to pay sanctions for requiring Wilson to seek a protective order.

**Kekoa's Section 271 Motion, Sagonowsky's Campaign Against the Judiciary, and the Court's Tentative Order on the Rents Motion**

In February 2014, Kekoa moved for $776,732.46 in section 271 sanctions against Sagonowsky based on her: (1) failure to sign recordable grant deeds to the Ashbury, Filbert, and Ainakea properties; (2) refusal to sign new grant deeds after the defective grant deeds could not be recorded; (3) refusal to withdraw her lis pendens notices from the Ashbury and Filbert properties after the judgment became final; (4) delaying Kekoa from expunging the lis pendens and appointing the court clerk as an agent to sign the grant deeds; (5) preventing Kekoa from moving into the Filbert property; (6) preventing Kekoa from selling the Ashbury property; and (7) seeking numerous continuances to delay resolution of the parties' claims. Kekoa sought $42,781.23 in attorney fees and costs, $165,585 in interest on the attorney fees and costs, and $180,000 for the reduced sales price of the Ashbury property, for a total of $388,366.32, multiplied by a 2.0 lodestar.

In his memorandum of points and authorities and a detailed supporting declaration, Kekoa explained he incurred $42,781.23 in attorney fees and costs to expunge the lis pendens, to appoint clerk as agent to execute the deeds for the Ashbury and Filbert properties, and to file the rents motion and section 271 motion. Kekoa also stated he lost $180,000 when Sagonowsky interfered with the sale of the Ashbury property by "scaring off all potential buyers . . . by falsely claiming to be a tort creditor and threatening to sue" under the Uniform Fraudulent Transfer Act (UFTA). Kekoa explained that a buyer made a $1.85 million dollar offer to buy the Ashbury property, but withdrew it because of the "defective grant deed problem and the lis pendens" and Sagonowsky's threat to sue under the UFTA. Another buyer eventually made an offer —

6

for $180,000 less — which Kekoa accepted because he "needed to pay his attorneys and other creditors[.]" Kekoa sought a multiplier of 2.0 to punish Sagonowsky's "misconduct and deter her from any future misconduct." Finally, Kekoa described Sagonowsky's significant wealth.

Shortly after Kekoa moved for sanctions, Sagonowsky began a campaign against the San Francisco Superior Court judiciary. In March 2014 — on the date set for the hearing on Wilson's motion for a protective order — Sagonowsky moved to disqualify Judges Cynthia Ming-Mei Lee and Massullo pursuant to Code of Civil Procedure sections 170.1 and 170.3, forcing the court to continue the hearing on Wilson's protective order motion. Both motions to disqualify were denied. Sagonowsky filed a petition for writ of mandate challenging, among other things, the ruling on her challenge to Judge Massullo, which this court denied on May 1, 2014.

The next day — on the date set for a case management hearing — Sagonowsky filed a complaint for damages and injunctive relief in federal court against Judges Lee, Julie Tang, and Massullo, and others. The trial court continued the case management hearing until May 2014.[8] On the morning of the case management conference, Sagonowsky moved to disqualify Judge Massullo. Judge Massullo held the case management conference and granted Wilson's motion for a protective order. The court later denied Sagonowksy's motion to disqualify Judge Massullo.

Neither Sagonowsky nor White appeared at the January 2014 hearing on the rents motion. In June 2014, the court issued a tentative order partially granting the motion, concluding: (1) Sagonowsky received notice of the hearing and Kekoa's request for relief; and (2) Kekoa was entitled to $28,510.80 in rents and security deposits, including interest, for the Ashbury and Filbert properties because Sagonowsky did "not dispute that she kept the rents and security deposits at issue" and that Sagonowksy was not entitled to

---

[8]     Shortly before the case management conference, Sagonowsky requested an "indefinite[e]" continuance for "[a]ll hearings and trials" because of various medical conditions, and attached a note from her psychiatrist.

7

keep this money to offset money she claimed Kekoa owed her under the judgment. The court rejected Sagonowsky's claims for affirmative relief.

The court set July 2014 hearing dates for the rents motion and Kekoa's section 271 motion, and for a prehearing conference pursuant to *Vesco v. Superior Court* (2013) 221 Cal.App.4th 275 (*Vesco*) "in recognition of Sagonowsky's previous and numerous requests for accommodation" under the ADA.

### ADA Accommodation Requests

In late June 2014, Sagonowsky requested a "[s]tay of all proceedings, trials and hearings" — including the *Vesco* hearing and the hearing on the rents motion and the section 271 motion — "for 6 months . . . due to total disability[.]" Sagonowsky's psychiatrist, Donald Stanford, M.D., submitted a supporting declaration. In July 2014, the court held the *Vesco* hearing. White appeared at the hearing, but Sagonowsky did not. Kekoa and his attorney appeared. Both parties presented evidence and argued their respective positions.

In a July 2, 2014 written order, the court denied "Sagonowsky's request to accommodate her by continuing the July 8 and 9 proceedings for 6 months." The court detailed the reasons why the declaration did not support the ADA request, and noted Sagonowsky was pursuing other cases and appearing in those cases while she claimed to be disabled. The court allowed Sagonowsky "to present live testimony through a video deposition which she will be required to complete before the July 8, 2014 hearing if she chooses to testify in that manner. Her attorney is required to give notice to the Court and opposing counsel as to the date, location and time of the video testimony to insure that all parties will be available. Sagonowsky will have 1.5 hours to present her direct testimony, Kekoa will have 2 hours for cross examination and Sagonowsky will have 30 minutes for redirect. . . . [¶] The Court will not accept testimony from Sagonowsky by phone or Skype."

Sagonowsky petitioned for writ relief; this court denied the petition. In August 2014, the court adopted its tentative ruling regarding the rents motion and ordered Sagonowsky to pay Kekoa $28,510.80.

8

*Sagonowsky's Opposition to the Section 271 Motion and Kekoa's Reply*

In her opposition to the section 271 motion, Sagonowsky argued, among other things: (1) the sanctions were "fabricated," "phony" and calculated to "harass" her; (2) section 271 does not authorize an award of "economic damages[;]" and such an award "would be in excess of [the] court's jurisdiction[;]" (3) the court lacked subject matter jurisdiction to award damages for alleged "conversion claims for rents and security deposits[;]" (4) the allegations regarding her financial condition were not supported by admissible evidence; (5) awarding section 271 sanctions against her would "impose an unreasonable financial burden[;]" and (6) Kekoa was not entitled to attorney fees. Sagonowsky objected to the evidence offered in support of the motion and sought section 271 sanctions against Kekoa.

In reply, Kekoa argued the court had broad discretion to consider "numerous factors" when imposing section 271 sanctions, and that there was sufficient evidence demonstrating an award of sanctions would not impose an unreasonable burden on Sagonowsky.

*Hearing and Order Imposing Section 271 Sanctions*

At the outset of the July 2014 hearing on the section 271 motion, White made an oral "ADA accommodation request," which the court denied as untimely. White claimed Sagonowsky was unable to have her deposition taken and could not present live testimony. White explained Sagonowsky had "been precluded from . . . being able to participate at [the] hearing in violation of her rights under the ADA . . . equal protection and due process[.]" White tried to leave the courtroom, but the court ordered him to remain.

Kekoa testified he received an offer of $1,850,000 to purchase the Ashbury property, but the offer was withdrawn after Kekoa disclosed his difficulty securing a recordable deed to the property and the "wrongful liens" Sagonowsky had filed against it. Kekoa eventually sold the Ashbury property for $1,670,000. Testifying as an expert in San Francisco real estate valuation, Kekoa stated Sagonowsky's San Francisco real property had a value of $13 million. Real estate broker Allison Chapleau testified for

9

Sagonowsky. Chapleau listed the Ashbury property for $1,595,000 and received multiple offers.

At the conclusion of the hearing, the court asked White how a family court judge could deter a litigant who "at every turn thwarts any opportunity to resolve a matter and files numerous motions? Even after judgment, refuses to sign over deeds to property that clearly pursuant to the judgment that has now has been upheld on appeal . . . because the litigant . . . never filed an opening brief[?]" The court characterized much of Sagonowsky's opposition to the section 271 motion — including her evidentiary objections — as "frivolous and not supported by the law" and observed the purpose of section 271 was to "prevent what has happened in this case. This case is a hallmark case for [section] 271. [¶] . . . Section 271 [was enacted] by the legislature to discourage this very behavior that has been demonstrated since the judgment [became] final in this action."

In a lengthy written order following the hearing, the court partially granted the section 271 motion and ordered Sagonowsky to pay Kekoa $767,781.23 in sanctions pursuant to section 271, comprised of the following: (1) $180,000 for the reduction in sales price of the Ashbury property; (2) $17,997.17 in attorney fees to release the deeds and appoint an elisor; (3) $18,549.06 in attorney fees and costs for Kekoa's rents motion; (4) $6,235 in attorney fees to prepare the section 271 motion; (5) $45,000 in interest from March 23 to December 23, 2013 on Kekoa's bill for attorney fees; and (6) $500,000 for Sagonowsky's "relentless and culpable conduct" in driving "up the cost of litigation against Kekoa" and "purposefully frustrat[ing] the final settlement of this post-judgment case."

The court concluded "credible evidence" left "no doubt that Sagonowsky engaged in a culpable, deliberate and focused campaign to delay as long as possible Kekoa's enjoyment of the three properties awarded to him in the . . . 2010 Judgment." Additionally, the court concluded its previous sanctions against Sagonowsky were "not a successful deterrent" and that Sagonowsky had "net real estate holdings valued in excess of $15 million" and as a result, "clearly ha[d] the ability to pay the award" and that the

10

award of attorney fees, costs and sanctions would not impose an unreasonable financial burden on her.

Sagonowsky appealed from the order partially granting the rents motion, and from the order granting the section 271 motion. We consolidated the appeals.

DISCUSSION

As stated above, section 271 authorizes the trial court to award attorney's fees and costs based "on the extent to which the conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys. An award of attorney's fees and costs pursuant to this section is in the nature of a sanction." (§ 271, subd. (a).) The purpose of the statute is """"to promote settlement and to encourage cooperation which will reduce the cost of litigation." [Citation.]'" (*Parker v. Harbert* (2012) 212 Cal.App.4th 1172, 1176, quoting *In re Marriage of Petropoulos* (2001) 91 Cal.App.4th 161, 177.)

"Section 271 '"authorizes sanctions to advance the policy of promoting settlement of litigation and encouraging cooperation of the litigants' and "does not require any actual injury." [Citation.] Litigants who flout that policy by engaging in conduct that increases litigation costs are subject to imposition of attorney fees and costs as a section 271 sanction.' [Citation.]" (*In re E.M.* (2014) 228 Cal.App.4th 828, 850, fn. omitted.) "The imposition of sanctions under section 271 is committed to the sound discretion of the trial court. The trial court's order will be upheld on appeal unless the reviewing court, 'considering all of the evidence viewed most favorably in its support and indulging all reasonable inferences in its favor, no judge could reasonably make the order.' [Citation.]" (*Ibid.*) "To the extent that we are called upon to interpret the statutes relied on by the trial court to impose sanctions, we apply a de novo standard of review. [Citation.]" (*In re Marriage of Feldman* (2007) 153 Cal.App.4th 1470, 1479 (*Feldman*).)

11

I.

*Section 271 Does Not Authorize Imposition of $500,000*
*or $180,000 in Sanctions*

Sagonowsky does *not* dispute the court's description of her conduct as "unscrupulous," "relentless and culpable," nor the court's characterization of her behavior as "economic warfare fueled by her wealth, her bitter hatred for Kekoa, and her complete disregard for the law." Sagonowsky makes no effort to dispel the court's conclusion that her conduct violated the trial court's 2010 judgment and "purposefully frustrated the final settlement of this post-judgment case." Thus, Sagonowsky leaves unchallenged the court's determination that her conduct warranted a sanction under section 271. However, Sagonowsky contends the amount the court awarded was excessive because $680,000 was untethered to attorney fees and costs incurred by Kekoa. We agree.

The plain language of section 271 authorizes the court to impose "attorney's fees and costs" as a sanction for conduct frustrating settlement or increasing the cost of the litigation. "'The statute's plain meaning controls the court's interpretation unless its words are ambiguous. If the plain language of a statute is unambiguous, no court . . . should, go beyond that pure expression of legislative intent. [Citation.]' [Citation.]" (*West Hills Farms, Inc. v. RCO AG Credit, Inc.* (2009) 170 Cal.App.4th 710, 715 (*West Hills*).) Here, the words "attorney fees and costs" are not ambiguous, and Kekoa does not argue otherwise. Section 271 "means what it says" — sanctions available under the statute are limited to "attorney fees and costs[.]" (See *West Hills, supra*, at p. 719 [provision of the Corporations Code did not authorize recovery of attorney fees independent of the bond; Legislature was capable of drafting a statute authorizing such recovery, but did not]; *Sino Century Development Limited v. Farley* (2012) 211 Cal.App.4th 688, 697-699 [rule of court's "plain language" limited recovery of certain fees as sanctions; noting the "Judicial Council knew how to draft a broader sanctions provision" and could have used broader language had it "intended to expand the recoverable" fees].)

12

Kekoa does not argue $500,000 and $180,000 are "attorney fees" or "costs" under section 271. Instead — and relying on *In re Marriage of Corona* (2009) 172 Cal.App.4th 1205 (*Corona*) and *In re Marriage of Quay* (1993) 18 Cal.App.4th 961, 970 (*Quay*) — he contends section 271 authorizes "non-cost sanctions."[9] In *Corona*, wife filed a motion for "unpaid support in the form of specified housing costs," and "asked the family court to award her attorney fees and costs for [husband's] conduct in forcing her to file the motion, as well as sanctions on grounds that as an attorney and drafter of the agreement [husband] was well aware of his obligations" to pay the housing costs. (*Corona*, *supra*, at pp. 1209, 1213.) The trial court granted the housing costs motion and sanctioned husband $5,000 "for taking an unreasonable position in connection" with the request for housing costs. (*Id.* at p. 1209.)

Husband challenged the sanctions award on appeal, claiming the court's written order did not comply with former Code of Civil Procedure section 128.6, and that his actions were not "frivolous" within the meaning of that statute. (*Corona, supra,* 172 Cal.App.4th at pp. 1223-1224.) As relevant here, wife argued section 271 authorized the sanctions. (*Id.* at p. 1224.) The *Corona* court upheld the sanction award. It noted the "family court did not state the statutory basis for its sanction award" but that the court did not abuse its discretion in ordering sanctions pursuant to section 271 (*id.* at pp. 1224,

---

[9] We reject Kekoa's contention that the court had inherent authority to impose monetary sanctions against Sagonowsky. A trial court has inherent authority to punish for contempt and control its own proceedings, but a court does not have inherent power to impose monetary sanctions payable to an opposing party or counsel. (*Yarnell & Associates v. Superior Court* (1980) 106 Cal.App.3d 918, 922 [monetary sanctions intended to compensate party for expense of opposing a frivolous motion could not be imposed without "statutory authority"]; *Andrews v. Superior Court* (2000) 82 Cal.App.4th 779, 782 [monetary sanctions not authorized under court's inherent powers].) The power to impose monetary sanctions must be authorized by statute. (*Bauguess v. Paine* (1978) 22 Cal.3d 626.) At oral argument, Kekoa claimed his trial attorney, Wilson, charged $165,585 in interest on Kekoa's attorney fee bill, and from this amount, we can infer Kekoa paid more than $500,000 in attorney fees. We reject this claim because it was made for the first time at oral argument, and because the trial court imposed $500,000 to punish Sagonowsky for her "relentless and culpable conduct[,]" not because that amount bore any relationship to the attorney fees paid by Kekoa.

1226.) As the court explained, husband never "questioned the statutory basis for [the] sanctions request at any point before the family court reached its decision. [Wife] was not required to establish any particular harm as a prerequisite to a sanctions award under section 271. [Citation.] Finally, at the hearing, [wife's] counsel stated that the requested sanctions were in the nature of a contribution to [her] attorney fees." (*Id.* at p. 1226, fn. omitted.)

*Corona* also rejected husband's argument that insufficient evidence supported the "amount of attorney fees and costs" wife incurred. (*Corona, supra,* 172 Cal.App.4th at p. 1226.) The court noted husband's "argument as to the lack of supporting evidence fails because a sanctions award under section 271 need not 'be limited to the cost to the other side resulting from the bad conduct.' [Citation.] Because section 271 is not a need-based statute and does not require a correlation between the sanctioned conduct and specific attorney fees, it was not essential that [wife] demonstrate her current financial situation and attorney fees by submitting an income and expense declaration." (*Id.* at pp. 1226-1227, quoting *Quay*, *supra,* 18 Cal.App.4th at p. 970.)

*Corona* is distinguishable. In *Corona*, husband did not challenge the statutory basis for the award of sanctions and wife argued the "sanctions were in the nature of a contribution to [her] attorney fees." (*Corona, supra,* 172 Cal.App.4th at p. 1226.) As a result, the *Corona* court did not consider the issue presented in this case: whether section 271 authorizes a trial court to award sanctions outside of attorney fees and costs. Here, Sagonowsky argued section 271 did not authorize the sanctions, and Kekoa did not — as in *Corona* — claim these amounts were "a contribution" to his attorney fees. (*Corona,* at p. 1226.) The *Corona* court's statement that sanctions awarded pursuant to section 271 "need not 'be limited to the cost to the other side resulting from the bad conduct'" does not assist Kekoa because the "costs" to which the *Corona* court referred were wife's *attorney fees*. (*Ibid*.) Here, there is no relationship between the sanctions of $500,000 and $180,000, and Kekoa's attorney fees.

The *Corona* court's comment that a party seeking sanctions is "not required to establish any particular harm as a prerequisite to a sanctions award under section 271"

14

does not, as Kekoa seems to suggest, authorize the sanctions at issue. (*Corona*, *supra*, 172 Cal.App.4th at p. 1226.) To support this statement, Corona cited *Feldman* without explanation. In *Feldman*, the husband breached his fiduciary duty to disclose financial information to the wife, and the court imposed sanctions pursuant to section 271. (*Feldman, supra,* 153 Cal.App.4th at pp. 1474-1475.) On appeal, husband claimed section 271 sanctions "may not be imposed on a spouse who breaches his fiduciary duty of disclosure if the other party fails to establish any *harm* resulting from the breach." (*Id.* at p. 1479.) The *Feldman* court rejected this argument and explained section 271 "authorizes sanctions to advance the *policy* of promoting settlement of litigation and encouraging cooperation of the litigants. [It] does not require any actual injury." As a result, wife was not required "show harm as a prerequisite to an award of sanctions[.]" (*Id.* at p. 1480.) This statement, which has been repeated in *Corona* and other cases, does not authorize a trial court to impose sanctions outside of attorney fees and costs. It simply means a party seeking sanctions pursuant to section 271 need not show the other side's sanctionable conduct, like the failure to disclose in *Feldman*, caused independent harm.

Nor are we persuaded by Kekoa's reliance on *Quay*. In *Quay*, the trial court ordered the husband to pay $100,000 of the wife's attorney fees under former Civil Code section 4370.6, the predecessor to section 271. (*Quay, supra,* 18 Cal.App.4th at p. 969.) On appeal, the husband claimed the sanctions award was improper because "the only attorney fees before the court were incurred after his wrongful conduct[.]" (*Id.* at p. 970.) The *Quay* court disagreed, concluding the statute "contemplates assessing a sanction at the end of the lawsuit, when the extent and severity of the party's bad conduct can be judged." (*Ibid.*) *Quay*'s holding regarding attorney fees has no application here because the sanctions at issue — $500,000 for Sagonowksy's culpable conduct and $180,000 in the reduction of the Ashbury property sales price — are not attorney fees. The *Quay* court also rejected the argument that "the sanctions must be limited to the cost to the other side resulting from the bad conduct. . . . There is no such limitation in Civil Code section 4370.6." (*Ibid.*) This comment simply means the party seeking sanctions

15

pursuant to section 271 need not establish with great precision an amount directly caused by the improper conduct. (See *In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 991.) In part, this flexibility exists because the misconduct may increase attorney fees in ways that are indirect and difficult to prove.

We are not persuaded by Kekoa's claim that *In re Marriage of Falcone and Fyke* (2008) 164 Cal.App.4th 814 (*Falcone*) supports the imposition of the sanctions at issue. In *Falcone*, the trial court awarded the husband attorney fees pursuant to section 271, and "$20,000 in additional sanctions." (*Id.* at pp. 822, 830.) On appeal, the wife did not challenge the statutory basis for the "additional sanctions" and *Falcone* did not hold a trial court may impose sanctions outside of attorney fees and costs pursuant to section 271. "Cases do not stand for propositions that were never considered by the court. [Citation.]" (*Mares v. Baughman* (2001) 92 Cal.App.4th 672, 679.)

Sagonowsky's deplorable conduct — described in detail by the trial court — overwhelmingly demonstrates "sanctions under section 271 were warranted." (*In re Marriage of Tharp* (2010) 188 Cal.App.4th 1295, 1318.) But we must conclude the plain language of section 271 did not authorize the court to award $500,000 to punish Sagonowsky for her culpable conduct, or $180,000 for the reduction in the sales price of the Ashbury property, because those amounts bear no relationship to Kekoa's attorney fees and costs. (See, e.g., *Bidna v. Rosen* (1993) 19 Cal.App.4th 27, 35, 38, fn. omitted [family law courts may impose "attorney fee awards which are intended as a sanction against a party's conduct" but "family law sanctions may not afford recovery for emotional distress," nor allow recovery of punitive damages].)[10]

---

[10]  Code of Civil Procedure section 128.5 — which authorizes sanctions to compensate a party for "reasonable expenses, including attorney's fees, incurred by [the] party as a result of bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay" — likely would have authorized the sanctions at issue, but Kekoa did not seek sanctions pursuant to that statute, and there is no indication the court's order imposing sanctions was predicated on that statute. (See *Corona, supra,* 172 Cal.App.4th at p. 1225, fn. 7 [refusing to "uphold the trial court's sanction" under Code of Civil Procedure section 128.7 because wife "did not comply with its strict procedural requirements"]; *In re Marriage of Daniels* (1993) 19 Cal.App.4th 1102, 1110 [moving

16

We reach a different conclusion with respect to the court's award of $45,000 in interest on attorney fees owed by Kekoa. This amount — comprised of $5,000 per month from March to December 2013 — is related to Kekoa's attorney fees. The interest accumulated when Sagonowsky's "unscrupulous conduct" delayed Kekoa's enjoyment of his share of the Ashbury property, and denied him the funds to pay his attorney fees. The court was therefore within its discretion under section 271 to award interest on the unpaid attorney fee bill as an additional fee imposed by his attorney. We are not persuaded by Sagonowsky's claim that insufficient evidence supports the award of $45,000 in interest. She concedes Wilson offered a declaration explaining how Sagonowsky's tactics delayed the litigation and caused interest on Kekoa's attorney fee bill to accrue. The trial court considered the evidence offered in support of the request for interest and determined Kekoa was entitled to interest from March to December 2013. Sagonowsky's sufficiency of the evidence claim fails. (*In re Marriage of Simmons* (2013) 215 Cal.App.4th 584, 589 [trial court's findings on section 271 motion supported by substantial evidence].)

Having concluded the court erred by imposing sanctions of $500,000 and $180,000 pursuant to section 271, we need not address Sagonowsky's contention that insufficient evidence supports that portion of the sanctions award. We have considered and rejected Sagonowsky's arguments that the amount of sanctions would impose an unreasonable financial burden on her, and that Kekoa was not entitled to recover attorney fees because he used the services of an attorney who previously represented her. (*Southern California Edison Co. v. Public Utilities Com.* (2014) 227 Cal.App.4th 172, 203, fn. 23.)

## II.

### *The Court Did Not Violate California Rules of Court, Rule 1.100*

Sagonowsky argues the court violated California Rules of Court, rule 1.100 (Rule 1.100), by holding hearings on the rents motion and the section 271 motion in her absence. Rule 1.100 governs requests for accommodation by persons with disabilities, to

party urged court to award sanctions pursuant to predecessor to section 271, "even though such sanctions could have been sought" under other statutes].)

17

ensure "persons with disabilities have equal and full access to the judicial system." (Rule 1.100(b).) Under Rule 1.100(c), a litigant may make a request for an accommodation and the request "must include a description of the accommodation sought, along with a statement of the impairment that necessitates the accommodation." Under appropriate circumstances, a trial continuance may be an appropriate accommodation. (*Vesco, supra,* 221 Cal.App.4th at p. 279; *In re Marriage of James & Christine C.* (2008) 158 Cal.App.4th 1261, 1276 (*Marriage of James*).)

"A request for accommodation may be denied only when the court determines that: [¶] (1) The applicant has failed to satisfy the requirements of this rule; [¶] (2) The requested accommodation would create an undue financial or administrative burden on the court; or [¶] (3) The requested accommodation would fundamentally alter the nature of the service, program, or activity." (Rule 1.100(f).) The court or the ADA coordinator must grant a request for accommodation under Rule 1.100 unless it makes at least one of these findings. (*Marriage of James, supra,* 158 Cal.App.4th at pp. 1272-1274.) "The court must promptly inform the applicant of the determination to grant or deny an accommodation request. If the accommodation request is denied in whole or in part, the response must be in writing. On request of the applicant, the court may also provide an additional response in an alternative format. The response to the applicant must indicate: [¶] (A) Whether the request for accommodation is granted or denied, in whole or in part, or an alternative accommodation is granted; [¶] (B) If the request for accommodation is denied, in whole or in part, the reason therefore; [¶] (C) The nature of any accommodation to be provided[.]" (Rule, 1.100(e)(2).)

In its written order, the court determined Sagonowsky was not disabled, and that she did not need the accommodation of a trial continuance. The court also implicitly determined Sagonwosky's requested accommodation — a six-month or "indefinite" continuance — would impose an undue financial or administrative burden on the court. Substantial evidence supports the court's conclusions. The court did not violate Rule 1.100 by not continuing the hearings. This case is not, as Sagonowsky seems to suggest, like *Marriage of James, supra,* 158 Cal.App.4th 1261, where it was "undisputed [the

18

wife]" was "disabled within the meaning of the ADA" (*id.* at p. 1277) because she suffered from "bipolar disorder, a potentially incapacitating mental illness which may result in disability under the ADA." (*Id.* at p. 1273, fn. omitted.) The wife also suffered from cancer, and "had been hospitalized the day before trial was set to resume." (*Id.* at p. 1277.) The trial court's refusal to continue the trial denied the wife meaningful access to the proceedings. (*Id.* at p. 1274.)

Here and in contrast to *Marriage of James*, there was no undisputed diagnosis of disability. In fact — and as described in detail by the trial court — the evidence suggested Sagonowsky was not disabled. Sagonowsky attended proceedings in another case pending in San Mateo County when she claimed to be "completely disabled." Despite determining Sagonowsky was not disabled, the court provided her with an accommodation — it permitted her to present videotaped testimony, which she declined. The court's denial of the continuance did not deprive Sagonowsky of meaningful access to the proceedings. Finally, this case bears no resemblance to *Biscaro v. Stern* (2010) 181 Cal.App.4th 702, 710, where the court's where the court's refusal to rule on the application for accommodation resulted in a structural error. There is no structural error or violation of Rule 1.100 requiring reversal here.

III.

*We Reject Sagonowsky's Challenge to the Award of Rents and Deposits*

Sagonowsky claims the court erred by awarding Kekoa $28,510.80 in rents and deposits on the Ashbury and Filbert properties awarded to him in the 2010 judgment. According to Sagonowsky, Kekoa's claim for "conversion of rents and deposits on his separate property was not cognizable in a dissolution." We disagree. As relevant here, the 2010 judgment awarded Kekoa the Ashbury and Filbert properties and required transfers of those properties to occur by mid-December 2010. Sagonowsky did not comply with the judgment. Instead, she delayed and avoided transferring management and control of the properties to Kekoa, forcing him to bring the rents motion. In February 2011, the court transferred control of the Ashbury and Filbert properties to Kekoa and ordered Sagonowsky to deliver to Kekoa "all funds" she received after December 15,

19

2010 for managing those properties. Sagonowsky withheld the rents and deposits until the court forced her to divulge them.

Section 290 authorized the court to enforce the 2010 judgment and its February 2011 order. That statute provides: "[A] judgment or order made or entered pursuant to this code may be enforced by the court by execution, the appointment of a receiver, or contempt, or by any other order as the court in its discretion determines from time to time to be necessary." "Proceedings to redress non-compliance with a family law judgment or order (as well as other matters arising out of a family law case) belong in the family law court rather than the general civil side of the superior court." (Hogoboom, et al., Cal. Practice Guide: Family Law (The Rutter Group 2016) ¶ 18:2, p. 18-3; *Burkle v. Burkle* (2006) 144 Cal.App.4th 387, 394-399.) Here, the court acted within its broad discretionary authority under section 290 in awarding Kekoa rents and deposits. (*In re Marriage of Schenck* (1991) 228 Cal.App.3d 1474, 1483-1484.) We reject Sagonowsky's argument to the contrary.

Nor are we persuaded by Sagonowsky's claim that there was "no admissible evidence" supporting the award of rents and deposits. Kekoa supported his motion with "evidence of checks, a declaration, and a full accounting of the income of the properties by way of bank statements." Sagonowsky has not demonstrated this evidence was inadmissible. Sagonowsky's remaining arguments regarding the award of rents and deposits "have been considered and merit no further discussion." (*Lyons v. Santa Barbara County Sheriff's Office* (2014) 231 Cal.App.4th 1499, 1506.)

DISPOSITION

The court's August 20, 2014 order on Kekoa's rents motion is affirmed. The court's September 22, 2014 order awarding Kekoa sanctions pursuant to section 271 is

20

affirmed in part and reversed in part.  The sanctions awarded pursuant to section 271 are reduced by $680,000.  In all other respects, the September 22, 2014 order is affirmed.  In the interest of justice, each party is to bear its own costs on appeal.  (Cal. Rules of Court, rule 8.276.)

_____
Jones, P.J.

We concur:

_____
Simons, J.

_____
Needham, J.

Superior Court of the County of San Francisco, No. FDI03755091, Anne-Christine Massullo, Judge

Joseph A. Hearst, for Plaintiff and Appellant.

Wood Robbins, LLP, B. Douglas Robbins and Sanny Kataoka, for Defendant and Respondent.