Filed 12/12/24  Marriage of Detrick CA1/4

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| In re Marriage of ADAM and MEGAN DETRICK. | |
| ADAM DETRICK,　　　Respondent,　　　　　v.　MEGAN DETRICK,　　　Appellant. | A166304　(San Mateo County Super. Ct. No. 20FAM00312) |

In this family law matter, the parties—Adam Detrick (Adam) and Megan Detrick (Megan)[1]—filed competing requests for domestic violence restraining orders (DVROs).  After holding an evidentiary hearing, the trial court granted Adam's request, denied Megan's request, and made adverse findings as to Megan's credibility and conduct.

The court later granted a request by Adam for more than $200,000 in sanctions against Megan, representing attorney fees incurred by Adam in the DVRO proceeding.  The court acknowledged the award was substantial

---

[1] We refer to the parties by their first names for the sake of clarity.

but concluded it was "absolutely reasonable" under the circumstances. Megan now appeals the sanctions order, contending (1) the award is not supported by statutory authority (or the court did not identify a proper statutory basis for it), and (2) the award was made in disregard of Megan's inability to pay it. We conclude the court's award was proper under Family Code[2] section 271, and we therefore affirm.[3]

## I. BACKGROUND

The parties married in September 2018 and separated in February 2020. They have a daughter, D.D., born in 2018. Megan has an older minor daughter from a previous marriage. Adam filed a petition for dissolution in February 2020.

Also in February 2020, Adam filed a request for a DVRO. Adam alleged that Megan physically abused him and D.D., and that Megan engaged in verbal and emotional abuse against him that included racial slurs and threats to prevent him from seeing D.D. Megan filed a DVRO request the following day. Megan alleged Adam physically and emotionally abused her and D.D.

Over several days in July and August 2021, the court held an evidentiary hearing on the parties' DVRO requests. On August 6, 2021, at the conclusion of the hearing, the court granted Adam's request and denied Megan's request. Addressing the parties' credibility, the court stated: "Although the Court finds that Mr. Detrick was not honest in his testimony

---

[2] Undesignated statutory references are to the Family Code.

[3] Because we affirm the court's order on the merits, we need not address Adam's contention that this appeal should be dismissed under the disentitlement doctrine based on Megan's alleged defiance of trial court orders and related misconduct.

about his drinking pattern and habits, the Court finds that when considered in totality, along with the testimony of other credible witnesses, Mr. Detrick was credible in every other aspect."

In contrast, as to Megan, the court stated: "The Court finds the testimony of Ms. Detrick in its totality to be self-serving and not credible." The court elaborated, stating: "Furthermore the demeanor and attitude evidenced by Ms. Detrick towards this Court and these proceedings was that of a petulant child. [¶] It is clear to this Court that Ms. Detrick has a deeply seeded and long-held belief that the rules and the law don't apply to her. [¶] It is clear from the evidence that she has behaved in a way for most of her adulthood that is in accord with that belief."

The court found Megan had committed child abuse and had also engaged in domestic violence against Adam in the presence of D.D. The court entered a three-year DVRO protecting Adam and D.D. The court granted sole physical and legal custody of D.D. to Adam, with Megan to have supervised visitation. The court's written order noted the question of attorney fees and costs would be addressed at a later hearing. Megan did not appeal the court's ruling on the parties' DVRO requests.

On September 16, 2021, Adam filed a request for order (Judicial Council form FL-300), with a box checked stating he was seeking "attorney's fees and costs," as well as a notation that he was requesting "sanctions" under sections 271, 2030, and 3027.1.[4] Adam requested

---

[4] As we discuss further below, sections 271 and 3027.1 provide for awards of sanctions in specified circumstances. (§§ 271, subd. (a) [authorizing attorney fees award "in the nature of a sanction" based on party's litigation conduct], 3027.1, subd. (a) [authorizing monetary

3

$222,952 in attorney fees and costs.  In supporting declarations, Adam's attorneys outlined the extensive work that they had conducted and believed necessary to establish Adam needed a DVRO and to defend against Megan's DVRO request.

As of the date of the fee request, the attorney fees and costs billed by the family law firm representing Adam totaled $197,724.82.  In addition, due to the nature of Megan's allegations, a criminal law specialist was retained for a flat fee of $50,000, bringing the total to $247,724.82.  Adam's family law attorney estimated that about 90 percent of the litigation to date had been related to "the domestic violence proceedings and associated custody issues," resulting in a request for $222,952.33 (i.e., 90 percent of $247,724.82).[5]

After receiving further briefing and oral argument, the court granted Adam's fee request at a hearing on February 23, 2022.  The court stated: "[T]he Court certainly recognizes that the amount that is being requested

---

sanctions against a person who, during a child custody proceeding, makes a knowingly false accusation of child abuse or neglect].)

The third provision cited by Adam in his request for order— section 2030—provides for fee awards to ensure access to legal representation.  (§ 2030, subd. (a)(1)–(2) [court may order one party to pay the other party's attorney fees and costs, based on the parties' relative incomes and needs, to "ensure that each party has access to legal representation"].)  The trial court did not rely on section 2030 in making the award that is at issue in this appeal.

[5] Adam also filed a request for order seeking modification of child and spousal support on multiple grounds, including that Megan (1) now had very limited custody time with D.D., (2) was cohabiting with an affluent boyfriend who was paying her expenses, and (3) could obtain work as an interior designer.  Adam asked that income be imputed to Megan in the amount of at least $81,769 per year (or $6,814.08 per month).

in terms of attorney's fees and costs is significant. The Court is also aware that looking at just that number by itself may seem absolutely unreasonable; however, having sat through that trial and understanding the—what was necessary for the petitioner [i.e., Adam] to present was nearly 100 percent in response to the behavior of the respondent [i.e., Megan]—and so, therefore, these fees and costs, the Court finds are absolutely reasonable."

The court continued, stating: "The Court will award attorney's fees and costs pursuant to Family Code Section 3344 [sic][6] and Family Code Section 271 in the amount of $222,952.33. The Court will order effective March 1st, Ms. Detrick is to pay Mr. Detrick the amount of $5,000 per month towards that order pending further order by the Court or some other stipulation between the parties in regards to their outstanding community property assets."

The court restated its ruling in a written order filed on July 14, 2022. As it had done in its oral ruling, the court stated the sanctions award was based on section 271, while also citing section "3037.1" (which the parties agree was likely intended to be a reference to § 3027.1, the section that authorizes sanctions based on false accusations of child abuse). As to the amount of the award, the court stated (similar to its oral ruling) that: "The Court recognizes that the amount is significant and looking at the figure alone, it may appear unreasonable. However, the Court sat through the entire trial and understanding what was necessary to respond to [Megan's]

---

[6] As the parties note, the court appears to have misspoken and may have intended to refer to section 6344 (which authorizes prevailing party fee awards in DVRO proceedings).

accusations, and the interests at stake, the amount awarded is absolutely reasonable under the circumstances."

Megan appealed.[7]

## II. DISCUSSION

Megan contends the court's sanctions award is not supported by statutory authority and is improper because the court did not consider whether she had the ability to pay it. We find no error and affirm.

### A. *The Court Did Not Abuse Its Discretion in Determining Sanctions Should Be Awarded Under Section 271*

#### 1. Legal Standards

As noted, section 271 was a basis for sanctions that Adam invoked in his request for order, and the court cited that statute in both its oral and written rulings. "[S]ection 271 authorizes the trial court to award attorney's fees and costs based 'on the extent to which the conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys. An award of attorney's fees and costs pursuant to this section is in the nature of a sanction.' (§ 271, subd. (a).) The purpose of the statute is ' " 'to promote settlement and to encourage cooperation which will reduce the cost of litigation.' " ' " (*Sagonowsky v. Kekoa* (2016) 6 Cal.App.5th 1142, 1152 (*Sagonowsky*).)[8]

---

[7] A sanctions award for more than $5,000 is appealable. (Code Civ. Proc., § 904.1, subd. (a)(12).)

[8] Section 271 states: "(a) Notwithstanding any other provision of this code, the court may base an award of attorney's fees and costs on the extent to which any conduct of each party or attorney furthers or frustrates

" 'Section 271 " 'authorizes sanctions to advance the policy of promoting settlement of litigation and encouraging cooperation of the litigants' and 'does not require any actual injury.' [Citation.] Litigants who flout that policy by engaging in conduct that increases litigation costs are subject to imposition of attorney fees and costs as a section 271 sanction." [Citation.]' [Citation.] 'The imposition of sanctions under section 271 is committed to the sound discretion of the trial court. The trial court's order will be upheld on appeal unless the reviewing court, "considering all of the evidence viewed most favorably in its support and indulging all reasonable inferences in its favor, no judge could reasonably make the order." [Citation.]' [Citation.] 'To the extent that we are called upon to interpret the statutes relied on by the trial court to impose

the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys. An award of attorney's fees and costs pursuant to this section is in the nature of a sanction. In making an award pursuant to this section, the court shall take into consideration all evidence concerning the parties' incomes, assets, and liabilities. The court shall not impose a sanction pursuant to this section that imposes an unreasonable financial burden on the party against whom the sanction is imposed. In order to obtain an award under this section, the party requesting an award of attorney's fees and costs is not required to demonstrate any financial need for the award.

"(b) An award of attorney's fees and costs as a sanction pursuant to this section shall be imposed only after notice by the requesting party or the court to the party against whom the sanction is proposed and opportunity for that party to be heard is provided by the court.

"(c) An award of attorney's fees and costs as a sanction pursuant to this section is payable only from the property or income of the party against whom the sanction is imposed, except that the award may be against the sanctioned party's share of the community property."

sanctions, we apply a de novo standard of review.'" (*Sagonowsky, supra,* 6 Cal.App.5th at p. 1152.) We review factual findings forming the basis of a sanctions award for substantial evidence. (*Menezes v. McDaniel* (2019) 44 Cal.App.5th 340, 347 (*Menezes*).)

### 2. Analysis

As noted, the trial court found that sanctions were warranted under section 271 and that the $222,952.33 requested by Adam, while very substantial, was reasonable under the circumstances. In particular, the court concluded the significant attorney fees incurred by Adam were a necessary response to Megan's behavior and her accusations, which the court had found not to be credible. The court's findings reflect a conclusion that Megan's conduct, including her false accusations against Adam, drove up the cost of litigation, providing a basis for an award of sanctions under section 271. (§ 271, subd. (a); see *Sagonowsky, supra,* 6 Cal.App.5th at p. 1152.) The court did not abuse its discretion by awarding sanctions.

Megan contends an award of sanctions under section 271 is improper because the court did not find that Megan took actions that frustrated settlement, such as making an unreasonable, one-sided settlement offer. But the court was not required to make express findings specifically addressing the parties' conduct during settlement negotiations. Section 271 applies where a party's conduct unreasonably increases litigation costs, which can occur through obstreperous conduct or unreasonable positions taken in litigation. (See *Menezes, supra,* 44 Cal.App.5th at p. 349 [failure to comply with court order directing transfer of property].) The court's findings here—that Megan's testimony and allegations were not credible, and that her conduct made it necessary for Adam to incur very substantial attorney fees—satisfy this standard.

8

Megan's assertion that in fact she took the more reasonable position in the litigation (such as by offering to settle with a mutual dismissal of the parties' DVRO requests) provides no basis for reversal. The trial court, who presided at the evidentiary hearing, concluded it was Megan's conduct that made it necessary for Adam to incur substantial fees. And Adam's attorneys stated in their declarations supporting the fee request that they and Adam concluded it was not appropriate to settle the matter with mutual restraining orders. Instead, given the nature of Megan's accusations, it was necessary to conduct extensive work to clear Adam's name and protect D.D. from future harm by Megan. That Megan has a different view on this point does not provide a ground to reverse the trial court's award of sanctions under section 271.

## B. *The Court's Citation of Other Statutes Does Not Invalidate Its Sanctions Award*

Megan argues the sanctions award should be reversed (or cannot be adequately reviewed) because the trial court, in addition to citing section 271, cited other statutes that Megan contends "do not exist" or do not apply. We disagree. Any uncertainty in the court's ruling on this point would not prevent our review, because "under settled appellate principles we may affirm the court's sanctions order on any ground supported by the record." (*In re Marriage of Corona* (2009) 172 Cal.App.4th 1205, 1225.) As discussed, the court did not abuse its discretion in awarding sanctions under section 271. That the court mentioned other statutory provisions that might also support an award (and made minor misstatements or

9

typographical errors as to the code sections for those other provisions) does not provide a basis for reversing the court's award under section 271.[9]

The cases cited by Megan are not to the contrary. In *Menezes* (relied on by Megan), the appellate court held an award of section 271 sanctions against the wife had to be "tethered to attorney fees and costs," rather than other types of expenses incurred by the husband. (*Menezes, supra,* 44 Cal.App.5th at p. 350.) Because the trial court's $200,000 award there did not include sufficient "detail" on that point to allow the appellate court "to track the award to the evidence in the record," the appellate court remanded the matter for further consideration. (*Id.* at p. 352.) There is no such uncertainty here. Instead, as noted, the amount of sanctions awarded by the court is based on Adam's attorney fees and costs as set forth in the evidence submitted in support of his request for order.

Megan's reliance on *In re Marriage of Sorge* (2012) 202 Cal.App.4th 626 is also misplaced. In *Sorge,* the trial court awarded sanctions based on sections 271 and 2102, and the appellate court reversed because the trial court had erroneously determined the husband had breached a duty of disclosure under section 2102. (*In re Marriage of Sorge,* at pp. 658–659.) The appellate court remanded for the trial court to determine what amount of sanctions, if any, to award based on other conduct the trial court had identified, i.e., that the husband "utilized various intimidation techniques throughout the litigation." (*Id.* at pp. 658–659; see *id.* at p. 659, fn. 12.) The present case, in contrast, is not one where a portion of the sanctioned

---

[9] Because we conclude the award was proper under section 271, we need not address Megan's contentions that a prevailing party fee award under section 6344 or an award of sanctions under section 3027.1 would not be proper on this record due to procedural or other irregularities.

10

party's conduct has been found to be proper or unsanctionable. The trial court's recognition that other statutory provisions might apply to the conduct it found sanctionable under section 271 does not require reversal.

## C. *Ability to Pay*

Megan challenges the amount of the court's sanctions award, contending the award of $222,952.33 is improper because the court disregarded her inability to pay it. We find no error.

" 'We apply an abuse of discretion standard in reviewing the amount of an attorney fee award. [Citation.] "[A]n experienced trial judge is in a much better position than an appellate court to assess the value of the legal services rendered in his or her court, and the amount of a fee awarded by such a judge will therefore not be set aside on appeal absent a showing that it is manifestly excessive in the circumstances." [Citation.] "The only proper basis of reversal of the amount of an attorney fees award is if the amount awarded is so large or small that it shocks the conscience and suggests that passion and prejudice influenced the determination." ' " (*Dragones v. Calkins* (2024) 98 Cal.App.5th 1075, 1085 (*Dragones*).)

As Megan notes, under section 271, the trial court is to consider "all evidence concerning the parties' incomes, assets, and liabilities," and the court "shall not impose a sanction . . . that imposes an unreasonable financial burden" on the sanctioned party. (§ 271, subd. (a); see § 270.) But there is no indication in the record that the court did not consider the evidence that was before it pertaining to that question. (E.g., *In re Marriage of Rangell* (2023) 95 Cal.App.5th 1206, 1224 [no suggestion in the record that the trial court disregarded evidence pertaining to husband's ability to pay § 271 sanctions award].) We reject Megan's suggestion that

11

an express finding by the trial court on that question is a prerequisite to the validity of a section 271 sanctions award.

Moreover, the evidence on this point was more mixed than Megan acknowledges. Megan argued she was unable to pay Adam's fees because she was not working and had no income and limited assets. But there was also evidence that Megan had previously worked as an interior designer, which Adam argued provided a basis for imputing income to her in the amount of at least $81,769 per year (or $6,814.08 per month). And it was undisputed that Megan's boyfriend (with whom she was living) was paying her living expenses and providing her with a car; a sanctions obligation would not render her unable to meet those expenses. The court was not required to conclude that Megan could not afford to pay any sanctions.

The court's order that Megan pay the sanctions award in monthly installments (although in a substantial amount, $5,000) also belies any suggestion that the court ignored the question of Megan's ability to pay. (*Dragones, supra,* 98 Cal.App.5th at p. 1086.) And, "[s]hould [Megan] find herself unable to afford the installment payments, she can file an appropriate request to modify the installment payments, with sufficient facts to demonstrate her inability to pay." (*Ibid.*)

Finally, the record does not support Megan's suggestion that the court imposed a sanction on her boyfriend (a nonparty), which would be improper under section 271. (§ 271, subd. (c) [award of sanctions under § 271 "is payable only from the property or income of the party against whom the sanction is imposed, except that the award may be against the sanctioned party's share of the community property"].) The court directed only Megan to pay the sanctions award. And it is proper (and required) for a trial court to consider "all evidence concerning the parties' incomes,

12

assets, and liabilities." (*Id.*, subd. (a).) In determining whether a sanctions award would impose an "unreasonable financial burden" on Megan (*ibid.*), the court reasonably could have considered the fact that many of her own expenses were being covered. We cannot say the court's award shocks the conscience or was influenced by passion and prejudice. (*Dragones, supra,* 98 Cal.App.5th at p. 1086.)

### III. DISPOSITION

The trial court's sanctions award of $222,952.33 against Megan and in favor of Adam is affirmed. Adam shall recover his costs on appeal.

STREETER, J.

WE CONCUR:

BROWN, P. J.
SIMONDS, J.*

---

* Judge of the Superior Court of California, County of Sonoma, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.