Filed 11/25/25  Marriage of Kenney and Saribalis CA1/4

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re Marriage of SHANA GAVIGLIO KENNEY and JOSEPH STEPHEN SARIBALIS. | |
| SHANA GAVIGLIO KENNEY,  Respondent,  v.  JOSEPH STEPHEN SARIBALIS,  Appellant. | A170450  (Marin County Super. Ct. No. FL1603199) |

Joseph Stephen Saribalis appeals from the family court's order that he pay sanctions of $100,000 in 20 monthly installments to Shana Gaviglio Kenney pursuant to Family Code section 271 for his and his attorney's misconduct in a marital dissolution proceeding.

Saribalis contends we must reverse because Kenney's sanctions request was untimely; insufficient evidence supports the court's findings of sanctionable conduct; and the court erred in finding he can afford to pay the sanctions ordered.  Kenney opposes on each of these points, and adds an appellate disentitlement argument on grounds that Saribalis willfully failed

1

to follow the court's order or post a bond or undertaking staying its implementation while this appeal is pending.

We reject Kenney's disentitlement argument and conclude Saribalis has forfeited his untimeliness claim. We also conclude Saribalis fails to meet his appellate burden to affirmatively show the family court abused its discretion.

Accordingly, we affirm.

## I. BACKGROUND

Kenney and Saribalis married in May 2015. The following year, Kenney filed a petition to dissolve the marriage and, in September 2017, the family court issued a judgment of dissolution. The judgment incorporated the parties' agreement on all disputes between them except for custody and visitation issues regarding their daughter, who was born in September 2015 (daughter). They have been litigating these custody and visitation issues ever since.

### A. *Litigation Over Custody of Daughter*

In November 2016, the court ordered that Kenney and Saribalis temporarily share joint legal custody of daughter, with Kenney having primary custody and Saribalis having certain supervised visitation rights. In 2017 and 2019, the court issued temporary orders that continued joint legal custody and modified Saribalis's visitation rights. In 2017, Saribalis appealed one of the family court's orders. We dismissed the appeal when Saribalis failed to file an opening brief.

In 2018, the court ordered a child custody evaluation. The evaluator, Dr. Pickar, recommended that Kenney be given sole legal custody of daughter. After conducting a March 2019 evidentiary hearing, the court ordered joint legal custody.

2

Over the next few years, the court considered several further requests by Saribalis for changes to its custody orders. In a December 6, 2019 order, the court rejected Saribalis's requests for certain custody modifications, other than modest ones. The court also decided to follow Dr. Pickar's recommendation that Kenney have temporary sole legal custody of daughter. Saribalis appealed the order, but some months later filed a request for dismissal, which we granted.

In November 2022, after a second child custody evaluation was completed, the court held an evidentiary hearing on Kenney's request that it implement the custody evaluator's recommendations and Saribalis's request that it order joint legal custody for daughter. Subsequently, the court issued a statement of decision and order in January 2023. The court denied Saribalis's joint legal custody request. It found there were no changes of circumstances that justified modifying its December 6, 2019 order and no evidence that joint legal custody was in daughter's best interests. It ordered that Kenney and Saribalis continue to share physical custody of daughter.

### B. *The Family Court's Sanctions Against Saribalis Under Family Code Section 271*

In November 2023, Kenney filed a request for an order (equivalent to a motion in family court pursuant to California Rules of Court, rule 5.92) that Saribalis pay Kenney $300,000 in attorney fees and costs as a sanction under Family Code section 271[1] (section 271) for his and his attorney's sanctionable

---

[1] As we will discuss, Family Code section 271 authorizes the family court to award attorney fees and costs as a sanction to the extent any conduct by a party or attorney "furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys," and may make such an award as a sanction. (Fam. Code, § 271, subd. (a).)

conduct throughout the case.[2]  Saribalis opposed the request with a brief and extensive declarations by himself and his counsel denying any sanctionable conduct.  Both parties waived an evidentiary hearing and appeared before the family court to argue their positions.

The court took the matter under submission.  In February 2024, it issued a written order that Saribalis pay Kenney $100,000 in section 271 sanctions, plus statutory interest of 10 percent per year on any installments or portions of installments he did not timely pay.

Saribalis filed a timely notice of appeal from the court's February 2024 order.  After the parties filed their briefs, we requested and the parties filed supplemental briefs pertaining to Saribalis's theory that Kenney's sanctions request was untimely.[3]

## II. DISCUSSION

### A. *Kenney's Request for Dismissal*

Before addressing Saribalis's claims, we address Kenney's request, made first in a motion to dismiss that we denied without prejudice to her raising it again in her respondent's brief, and then in her respondent's brief, that we dismiss Saribalis's appeal without addressing its merits.  Kenney argues we should dismiss under the disentitlement doctrine because of

---

[2] Kenney separately requested that the family court grant her sanctions in the same amount against Saribalis and his attorney pursuant to Code of Civil Procedure section 128.5.  The court subsequently denied this request.  We do not discuss that request or order further because neither are a subject of this appeal.

[3] On November 5, 2025, Saribalis filed a "motion to strike outside of record references in respondent's brief and respondent's appendix."  Kenney opposed the motion, and on November 10, 2025, filed a "motion to take judicial notice or to take additional evidence on appeal."  Both the motion to strike and the request for judicial notice are dismissed as moot.

4

Saribalis's failure to comply with the family court's sanctions order or post a bond or undertaking staying it while his appeal is pending.

The disentitlement doctrine is based on the principle that " '[a] party to an action cannot, with right or reason, ask the aid and assistance of a court in hearing his demands while he stands in an attitude of contempt to legal orders and processes of the courts of this state.' " (*Stoltenberg v. Ampton Investments, Inc.* (2013) 215 Cal.App.4th 1225, 1230, quoting *MacPherson v. MacPherson* (1939) 13 Cal.2d 271, 277.) Accordingly, "[a]n appellate court has the inherent power, under the 'disentitlement doctrine,' to dismiss an appeal by a party that refuses to comply with a lower court order." (*Stoltenberg*, at p. 1229, citing, e.g., *Moffat v. Moffat* (1980) 27 Cal.3d 645, 652; see *In re Marriage of Hofer* (2012) 208 Cal.App.4th 454, 459–460 [dismissing appeal of an attorney fees and costs award in a marital dissolution proceeding when determinations were stymied by appellant's refusal to provide ordered discovery in the court below].)

The doctrine allows an appellate court "to dismiss an appeal by a party who has refused to obey the [lower] court's order being appealed and/or engaged in 'egregious' conduct that frustrates the . . . court from carrying out its orders. 'Appellate disentitlement "is not a jurisdictional doctrine, but a discretionary tool that may be applied when the balance of the equitable concerns make it a proper sanction." ' " (*In re A.K.* (2024) 99 Cal.App.5th 252, 270–271.) It "may be applied in the absence of a formal judgment of contempt: all that is required is a party's willful obstruction of, or failure to comply with, trial court orders. [Citation.] Dismissal under the disentitlement doctrine is not punishment for contemptuous acts, but it is instead an 'equitable tool' that allows an appellate court to induce compliance with a presumptively valid order, and it is not lightly applied.

5

[Citation.] The doctrine . . . ' "is particularly likely to be invoked where the appeal arises out of the very order (or orders) the party has disobeyed." ' " (*In re Marriage of Hearn* (2023) 94 Cal.App.5th 380, 388–389.)

Kenney argues we should dismiss this appeal pursuant to the disentitlement doctrine because of Saribalis's "willful disobedience" of the family court's sanctions order, the subject of his appeal. She contends, via a declaration, that Saribalis has only paid her $700 of the $100,000 he has been ordered to pay in monthly installments, and that he has not posted a bond or undertaking to stay the sanctions order while this appeal is pending. By his actions, Kenney argues, Saribalis "has thumbed his nose at the trial court's authority" to order these payments while appealing from that same order. She also urges dismissal because of Saribalis's "numerous violations of the trial court's orders in this case," as indicated in the family court's sanctions order.

Saribalis responds that no evidence indicates he has willfully or flagrantly violated any court order. Instead, he asserts, also via a declaration, that he has "an undisputed inability to pay" Kenney as ordered. According to his declaration, he, among other things, lives modestly on a mechanic's salary and is swimming in debt—owing $7,000 on his credit cards, over $120,000 to his lawyers in this case, and $115,000 to his brother, who loaned him money for attorney fees he incurred in this case; also, Saribalis asserts, he must also make monthly child support payments that total about $10,000 a year. Kenney responds that the court determined Saribalis was financially able to pay her, and contends his ability to pursue

6

this appeal via counsel belies his contentions about his financial circumstances.[4]

We deny Kenney's motion to dismiss for two separate and independent reasons. First, she has not established that Saribalis has the financial resources to obtain a stay of the family court's sanctions order. Both Saribalis's contentions about his financial circumstances and the record of them in an income and expense statement he filed in opposition to Kenney's sanctions request (which we discuss below) indicate that, whether or not we determine he can afford to pay Kenney the sanctions ordered in monthly installments, he may lack the resources to obtain an undertaking or bond for the full amount he has been ordered to pay— $100,000. He may need to do so in order to obtain a stay of the court's order while this appeal is pending.

Second, Kenny overstates the record of Saribalis's violation of other family court orders in arguing for dismissal pursuant to the doctrine. As we will discuss, some of the family court's findings of sanctionable conduct were *not* regarding violations of court orders, and some of the findings were based on Saribalis's attorney's conduct rather than his own.

We therefore decline to apply the disentitlement doctrine to Saribalis's appeal. We now proceed to Saribalis's arguments.

### B. *Saribalis's Untimeliness Claim*

Saribalis first argues we must reverse because the family court erred in overruling his objection to Kenney's sanctions request as untimely pursuant to California Rules of Court, rule 3.1702.

---

[4] Saribalis also contends Kenney has taken no steps to enforce the order. Kenney points out that she is not required to act to enforce the order and that Saribalis was required to pay her once the family court ordered him to do so.

Saribalis filed a written objection to Kenney's request for an evidentiary hearing along with his brief in opposition to Kenney's sanctions request. He contended Kenney's request to "present *undefined* 'live testimony' to include cross examining [Saribalis] and counsel (McCarthy) must be denied because," among other things, Kenney's "Section 271 motion must be stricken as untimely as a matter of law/not filed within the s [*sic*] time required by California Rules of Court, Rule 3.1702(b)(1) or at the latest within 60 days from entry of judgment on custody (*Robert J. v. Catherine D.* (2009) 171 Cal.App.4th 1500.)" Saribalis did not raise this issue in his opposition to Kenney's request, and in his objection to a hearing did not explain why the sanctions request was untimely.

At the hearing, Saribalis was represented by two attorneys, one to argue against Kenney's request for sanctions under Code of Civil Procedure section 128.5 and McCarthy to argue against the sanctions request under section 271. After the parties waived an evidentiary hearing, Kenney's counsel argued California Rules of Court, rule 3.1702(b)(1) applied to statutory fee requests in civil actions, not to a section 271 sanctions request under family law. The court agreed. Saribalis's attorney arguing against the Code of Civil Procedure section 128.5 motion briefly argued that California Rules of Court, rule 3.1702 had been applied in a few family law cases that counsel identified cryptically, without providing any legal citations, before indicating she would leave this section 271-related argument to McCarthy. McCarthy then focused on a laches argument (not raised on appeal) and argued at length without reference to California Rules of Court, rule 3.1702. Nothing more was said about the matter at the hearing.

8

In its written order, the court overruled Saribalis's objection because California Rules of Court, rule 3.1702(b)(1) "on its face is limited to statutory attorney's fees, not to sanctions."

On appeal, Saribalis for the first time argues *why* Kenney's sanctions request was untimely under California Rules of Court, rule 3.1702. He contends the family court erred in concluding the rule does not apply to family law matters. He relies on Family Code section 210 (stating that unless indicated otherwise, the rules of practice and procedure applicable to civil actions generally apply to family law cases) and *In re Marriage of Freeman* (2005) 132 Cal.App.4th 1, which applied a differently numbered version of California Rules of Court, rule 3.1702, California Rules of Court, rule 870.2, to reverse a family court order of post-judgment sanctions for appellate attorney fees made under section 271, the appellate court concluding the motion was untimely under the rule. (*Id*. at p. 4; *State Farm. General Insurance Co. v. Lara* (2021) 71 Cal.App.5th 197, 213 [indicating rule 870.2 is now rule 3.1702].) He did not raise either below at the sanctions request hearing, referring only to what is transcribed as a "*Freedman*" case.

Saribalis makes the following contentions for the first time on appeal. First, he argues, the family court issued a "final" order awarding Kenney sole legal custody of daughter in its January 2023 order. This appealable final order, he contends, started the clock on the time Kenney had to request section 271 sanctions under California Rules of Court, rule 3.1702(b). Kenney's request was untimely because she did not file it until almost 300 days later in November 2023.

Kenney disagrees and contends in her supplemental brief that Saribalis has forfeited his right to appeal the order on this ground by his

failure to argue tardiness below. We agree with Kenney on the issue of forfeiture. Saribalis did not provide the legal basis for his "objection" below that the court should "strike" Kenney's sanctions request. Regardless, it appears to us to be an argument that should have been presented with an explanation and relevant legal authority, and was not.[5] (See *People v. Partida* (2005) 37 Cal.4th 428, 434–435 [evidentiary objection " 'must be made in such a way as to alert the trial court to the nature of the anticipated evidence and the basis on which exclusion is sought, and to afford the People the opportunity to establish its admissibility" or be forfeited].) While in his written objection below Saribalis cited the same rule below that he raises on appeal, California Rules of Court, rule 3.1702, he did so only in one confused sentence made in support of denying Kenney's request to cross-examine him and his attorney at the sanctions hearing. He cited only one case, *Robert J. v. Catherine D.*, *supra*, 171 Cal.App.4th 1500, without explanation. The principal focus of case is on the application of rule 3.1702 to a motion for sanctions under section 3027.1. How its holding applies here, if at all, is far from self-evident.

Saribalis argues in his supplemental briefing to this court, apparently in order to justify his lack of an adequate objection below, that the family court accepted and understood that its January 2023 legal custody order was a "final" order equivalent to the issuance of a final judgment. His argument assumes it is obvious that the issuance of this order began the limited time for Kenney to file a sanctions request under California Rules of Court, rule 3.1702. We see no indication in the record of the court's acceptance and

---

[5] Saribalis did argue below that Kenney's request should be denied because of her failure to submit a brief in support of it, contending this was a violation of California Rules of Court, rule 3.1113.

understanding as Saribalis contends. Saribalis fails to show the question was put before the court.

Saribalis also argues his counsel's ability to explain his position on the issue of timeliness was limited by the court's lack of interest in entertaining argument. The record does not support this contention either. Saribalis was represented by two attorneys at the hearing, one to argue against Kenney's sanctions request under Code of Civil Procedure section 128.5 and McCarthy to argue against the request under section 271. As noted above, the attorney arguing against the section 128.5 motion made the brief argument we have summarized above and, upon the court reminding her of her designated task, indicated she would leave the section 271 argument to McCarthy. But McCarthy did not refer to California Rules of Court, rule 3.1702.

The court expressed impatience when she repeated arguments the court was already aware of, and asked McCarthy at the conclusion of her presentation, "Is there something new and fresh that you want to say that you haven't already said?" McCarthy answered, "No." Under these circumstances, we see no reason why McCarthy could not make the argument below that Saribalis [or "she," if you're referring to attorney Nancy McCarthy] raises for the first time in this appeal. Of course, the rule of forfeiture rests on a policy that trial courts should generally be given an opportunity to consider and rectify in the first instance any asserted error that is going to be raised later on appeal. We see no reason what that rule should not apply here,

Given the absence of any meaningful argument by Saribalis below that put the court on notice of his contentions, we have no quarrel with the family court rejecting his "objection" based on the language on the face of California Rules of Court, rule 3.1702. We have no need to address the issues raised by

11

Saribalis on appeal because he never argued his theory of untimeliness to the family court.  Put simply, " "[a] party cannot argue the court erred in failing to conduct an analysis it was not asked to conduct.' " (*People v. Tully* (2012) 54 Cal.4th 952, 979–980 [arguments not presented to the trial court were forfeited], quoting *People v. Partida, supra*, 37 Cal.4th at p. 435.) Saribalis has forfeited his appellate claim that Kenney's sanction request was too late.

Even if we were to conclude Saribalis has not forfeited his claim, we would reject it.  Assuming for the sake of argument that California Rules of Court, rule 3.1702 applies to sanctions requests made pursuant to section 271, subdivision (b)(1) of that rule sets the time deadline for the filing of a request for statutory attorney's fees under it.  (Cal. Rules of Court, rule 3.1702(a).)  It provides in relevant part, "A notice of motion to claim attorney's fees for services up to and including the rendition of judgment in the trial court . . . must be served and filed within the time for filing a notice of appeal" under the rules for appealing from an unlimited civil case.  (Cal. Rules of Court, rule 3.1702 (b)(1).)  This time limit, under California Rules of Court, rule 8.104, subject to certain exceptions not relevant here, is either within 60 days of service of notice of entry of judgment or, if one is not served, within 180 days of entry of judgment.  (Cal. Rules of Court, rule 8.104(a)(1)(A)–(C).)

The time limits imposed by California Rules of Court, rule 3.1702 "do not commence to run upon entry of a prejudgment appealable order" because "the 'outside' time limit . . . was intended to be entry of final judgment—not entry of a prejudgment appealable order." (*Carpenter v. Jack in the Box Corp.* (2007) 151 Cal.App.4th 454, 458, 468.)  Its time limits "do not commence to run until entry of judgment at the conclusion of the litigation."

12

(*Id.* at p. 468.) A final judgment is one that "determine[s] all issues or end[s] the litigation as to any party." (*George v. Shams-Shirazi* (2020) 45 Cal.App.5th 134, 141 [denial of a motion to set aside a custody order not a final judgment], citing *Crespin v. Shewry* (2004) 125 Cal.App.4th 259, 270 [a permanent injunction is not a final judgment given the trial court's continuing jurisdiction to modify or dissolve it].) "It is the substance and effect of an order, not its label or form, that determines whether it is a final judgment." (*Crespin*, at p. 270.)

Here, contrary to Saribalis's contentions, the family court has not issued a final judgment in this case, nor have the proceedings concluded. In its January 2023 order, the court made clear the ongoing nature of the case. Rather than give any indication that its physical custody orders were final, it indicated that it would continue to issue such rulings. For example, it encouraged Saribalis to modify his behavior and gain insights consistent with Dr. Pickar's second child custody evaluation and added, "Until he does so, it is unlikely that the orders set forth in this Order . . . will change in a fashion desired by [Saribalis]." The court also admonished Kenney and Saribalis to be civil with, and not video, each other and added that violations of its order could result in sanctions or the issuance of a CLETS restraining order.

Along with the argument that the family court issued a final legal custody order in 2023, Saribalis argues in his supplemental brief that the family court's March 25, 2019 order had all the attributes of a "final physical custody order." As our review indicates, the record does not support this contention. He also argues that any of California Rules of Court, rule 3.1702 that would allow a family court to order sanctions for conduct over a period of years would put respondents at an unfair disadvantage. We disagree.

13

Marital dissolution proceedings may take years to resolve, and section 271 is intended as a tool to regulate the party's behavior, allowing even repeated sanctions awards years apart. (See *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 [affirming $64,500 sanctions award ordered during proceedings] (*Falcone & Fyke I*) and *In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964 [considering a postjudgment order of sanctions] (*Falcone & Fyke II*).) We disagree that it is unfair to hold a litigant accountable for sanctionable conduct at all stages of such proceedings so long as any request for sanctions is timely made in accordance with the governing rules and statutes. We think the section 271 sanctions was timely made here.

In short, even if Saribalis had not forfeited it, his claim that Kenney's sanctions request was untimely lacks merit.

### C. *The Family Court's Section 271 Findings of Sanctionable Conduct*

Saribalis argues we must reverse the family court's sanctions order because insufficient evidence shows he engaged in sanctionable conduct. He also argues the court overlooked the fact that Kenney "failed to make any showing whatsoever of any purported 'added' fees due to any conduct by [Saribalis]," and improperly awarded Kenney a double recovery by including discovery sanctions and attorney fees she relinquished in the settlement agreement incorporated into the 2017 judgment.

#### 1. The Proceedings Below

As noted above, based on conduct by Saribalis and his attorney throughout the case, Kenney sought $300,000 in section 271 sanctions. In support of her request, she submitted a declaration and exhibits. Saribalis opposed the request, largely based on declarations by himself and his attorney, which also were accompanied by exhibits. Both parties waived an

14

evidentiary hearing and appeared before the family court to argue their positions.

After taking argument, the court took the matter under submission. In February 2024, it issued a written order that Saribalis pay Kenney $100,000 in section 271 sanctions plus statutory interest of 10 percent per year on any installments or portions of installments he did not timely pay. Explaining its decision at some length, the court began by stating, "Since the inception of the action, this case has been extraordinarily highly conflicted, resulting in numerous hearings," all but one of which related to child custody, discovery, and cross-requests for domestic violence restraining orders. The court also noted that it had previously ordered that Saribalis and his counsel pay $3,500 in joint and several sanctions for discovery abuses.

Then, after summarizing the applicable principles that govern a section 271 sanctions request, the court found that Saribalis and Nancy P. McCarthy were responsible for 13 categories of sanctionable conduct. These included the filing and abandonment of two appeals; Saribalis's and McCarthy's interference with the two child custody evaluations; McCarthy's violation of the court's order not to contact Pickar, the child custody evaluator, ex parte; McCarthy's ex parte letters and emails to the court regarding matters already under submission; Saribalis's aggressive conduct towards daughter's therapists; McCarthy's efforts to depose the co-parent counsellor, Dr. Friedlander; McCarthy's bullying cross-examination of daughter's kindergarten teacher; Saribalis's "frivolous" requests for primary physical custody of daughter that showed a " 'stunning' " unawareness of the shock it would cause to daughter; McCarthy's insistence on pursuing evidence and discovery after the close of evidence in the November 2022

evidentiary hearing; and McCarthy's insistence, starting in August 2020, that Kenney communicate with McCarthy rather than Saribalis directly.

The court also identified an overall pattern of sanctionable conduct. Saribalis's attitude towards Kenney in particular and custody issues in general had rendered the case "difficult"; the record contained indications that McCarthy helped him draft "aggressive communications" to Kenney, the child custody evaluator, and others; and statements by McCarthy at oral argument on Kenney's sanctions request were telling, including that Saribalis just "wanted . . . more time" with daughter, which showed an unawareness of the need to focus on daughter's best interests as reflected in the court's custody and visitation orders, rather than on his own interests.

The court acknowledged that Kenney's conduct "has not been blameless," including her early request for a domestic violence restraining order that the court denied, and conduct for which the court found her in contempt in 2018. It said it considered this misbehavior "minor compared to tactics employed by [Saribalis] and Ms. McCarthy," and that it reduced the sanctions amount in light of her conduct. The court concluded that the identified conduct by Saribalis and McCarthy was sanctionable because it "frustrated the policy of the law to promote settlement of litigation and to cooperate to reduce the cost of litigation."

### 2. Legal Standards

#### a. Section 271

Section 271 provides in relevant part: "Notwithstanding any other provision of this code, the court may base an award of attorney's fees and costs on the extent to which any conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between

16

the parties and attorneys," and may make such an award as a sanction. (Fam. Code, § 271, subd. (a).)

Section 271 sanctions "vest[] family law courts with an additional means with which to enforce this state's public policy of promoting settlement of family law litigation, while reducing its costs through mutual cooperation of clients and their counsel." (*In re Marriage of Tharp* (2010) 188 Cal.App.4th 1295, 1318.) These sanctions "do not seek to redress civil injuries to a victim. Rather, they create incentives for divorcing parties to be candid with each other and the court. [They] look forward to spur good conduct, not backward to right past wrongs." (*In re Marriage Gutierrez* (2020) 48 Cal.App.5th 877, 882.) Accordingly, a party "is not required to demonstrate any financial need" nor "any actual injury" to receive a section 271 sanctions award. (*In re Marriage of Tharp*, at pp. 1316–1317.) Also, "[s]ection 271 does not require that the sanctioned conduct be frivolous or taken solely for the purpose of delay." (*Id*. at p. 1318.) It also "explicitly makes parties liable for the obstreperous actions of their counsel . . . ." (*In re Marriage of Daniels* (1993) 19 Cal.App.4th 1102, 1110 [regarding Civil Code section 4370.6, a similar predecessor to section 271 (*Webb v. Webb* (2017) 12 Cal.App.5th 876, 884)].)

Section 271 "does not require a correlation between the sanctioned conduct and specific attorney fees . . . ." (*In re Marriage of Corona* (2009) 172 Cal.App.4th 1205, 1226–1227 [concluding it was not essential for the party seeking the award to "demonstrate her current financial situation and attorney fees by submitting an income and expense declaration"].) The party seeking sanctions "need not establish with great precision an amount directly caused by the improper conduct. [Citation.] In part, this flexibility exists because the misconduct may increase attorney fees in ways that are

17

indirect and difficult to prove." (*Sagonowsky v. Kekoa* (2016) 6 Cal.App.5th 1142, 1155–1156 (*Sagonowsky*).) All that is required is for the party seeking sanctions to show the sanctions are "tethered" to attorney fees and costs incurred by the movant. (*Menezes v. McDaniel* (2019) 44 Cal.App.5th 340, 350–351 [party's travel expenses and vacation time not a basis for section 271 sanctions]; *In re Marriage of Erdt & Terhorst* (2021) 59 Cal.App.5th 898, 900, 904–905 [sanctions for attorney fees cannot be awarded to a self-represented party, citing *Menezes*'s "tethered" approach].) In other words, the sanctions must "b[ear] a relationship" to the movant's fees and costs. (*Sagonowsky*, at p. 1153, fn. 9.)

### b. Standard of Review

" 'A sanction order under . . . section 271 is reviewed under the abuse of discretion standard.' " (*In re Marriage of Feldman* (2007) 153 Cal.App.4th 1470, 1478.) Where, as here, the appellant argues there was insufficient evidence to support the family court's sanctions order, we review the court's factual determinations for substantial evidence. " ' "A reviewing court faced with such a claim determines 'whether, after viewing the evidence in the light most favorable to the [moving party], any rational trier of fact could have found [in favor of the order].' [Citations.] We examine the record to determine 'whether it shows evidence that is reasonable, credible and of solid value from which a rational trier of fact could find [in support of the order].' [Citation.] Further, 'the appellate court presumes in support of the [order] the existence of every fact the trier could reasonably deduce from the evidence." ' " (*People v. Flinner* (2020) 10 Cal.5th 686, 748 (*Flinner*).)

### 3. Analysis

Using a divide-and-conquer approach, Saribalis attacks, one-by-one, sixteen asserted errors in the findings underpinning the section 271 award made against him. Most of these claims of error are for what he views as

18

insufficiency of the evidence. Before turning to each of the claimed errors, we begin with some general problems that run through all of Saribalis's challenges to the section 271 award.

First, in many of his challenges, Saribalis cites to documents that he does not establish were submitted below or referred to by the parties or the court *with regard to Kenney's section 271 sanctions request.* Instead, he cites to documents, such as the parties' submissions to the court and court records and orders, from other matters in the larger case file and contained in the appellant's appendix, albeit including matters involving the conduct the family court found to be sanctionable.

"It is an elementary rule of appellate procedure that, when reviewing the correctness of a trial court's judgment, an appellate court will consider only matters which were part of the record at the time the judgment was entered," absent certain circumstances not applicable here. (*Reserve Insurance Co. v. Pisciotta* (1982) 30 Cal.3d 800, 813 (*Reserve Insurance Co.*), quoted in *Haworth v. Superior Court* (2010) 50 Cal.4th 372, 379, fn. 2.) "This rule preserves an orderly system of [litigation] by preventing litigants from circumventing the normal sequence of litigation." (*Reserve Insurance Co.*, at p. 813.) " '[A]n appellate court generally is not the forum in which to develop an additional factual record . . . .' " (*People v. Jacinto* (2010) 49 Cal.4th 263, 272, fn. 5.)

Thus, even if the documents Saribalis cites may have been related to what the court found was sanctionable conduct, we will not consider them for the first time on appeal if they were not before the family court when it decided Kenney's sanctions request, as we are not a court of first instance empowered to make factual findings. Kenney does not show they are "evidence" upon which the court made any factual determinations. Without

19

these referenced documents, a number of Saribalis's arguments are factually unsupported and, as a result, Saribalis fails to carry his "burden . . . [of] *affirmatively show*[*ing*] there was no substantial evidence in the record . . . ." (*California Native Plant Society v. City of Rancho Cordova* (2009) 172 Cal.App.4th 603, 626 (original italics) (*California Native Plant Society*); *Center for Biological Diversity v. Department of Forestry & Fire Protection* (2014) 232 Cal.App.4th 931, 948 [quoting *California Native Plant Society*] (*Center for Biological Diversity*.)[6]

Second, Saribalis makes a number of conclusory arguments asserting insufficient evidence without citing to the record or legal authority. "We are not bound to develop appellants' arguments for them. [Citation.] The absence of cogent legal argument or citation to authority allows this court to treat the contentions as waived. ([Citation]; see also Cal. Rules of Court, rule 8.204(a)(1)(B) [each point in a brief must be supported by 'argument and, if possible, by citation of authority'].)" (*Falcone & Fyke I*, *supra*, 164 Cal.App.4th at p. 830.)

Third, Saribalis repeatedly argues that the family court failed to sufficiently consider his evidence, contending, for example, that the court refused to "objectively review the record." Such contentions in effect ask that

---

[6] Kenney also cites documents from the court file that are contained in the appellant's appendix, but that she does not establish she submitted to the family court in support of her sanctions request. We will disregard her arguments based on such documents as well.

It appears that the family court considered events in the case it had witnessed over time and reviewed at least some of the court file (in its order it refers to certain court minutes, a reporter's transcript, and an order), although the extent of this review is not clear from the record. Saribalis raised no issue with the court's references below, such as in a motion for reconsideration. Regardless, as we have discussed, we do not review evidence proffered by the parties for the first time on appeal.

we reweigh the evidence, which we shall not do when reviewing a record for insufficient evidence. (*In re Caden C.* (2021) 11 Cal.5th 614, 640 ["In reviewing factual determinations for substantial evidence, a reviewing court should 'not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts.' "].)

Fourth, for many of his arguments, Saribalis simply points to portions of the record that favor his position without addressing the evidence that supports the court's findings. This is insufficient to meet his burden to affirmatively show error. (*California Native Plant Society*, *supra*, 172 Cal.App.4th at p. 626.) It is appellant's " ' "duty to set forth a fair and adequate statement of the evidence which is claimed to be insufficient. He cannot shift this burden onto respondent, nor is a reviewing court required to undertake an independent examination of the record when appellant has shirked his responsibility in this respect." ' " (*In re Mariage of Marshall* (2018) 23 Cal.App.5th 477, 487.)

With these general deficiencies in mind, we turn specifically to the full list of claimed errors in the court's findings of sanctionable conduct.

### a. Saribalis's inadmissible evidence argument

Saribalis first contends "[t]he record is replete with instances of the trial court allowing and relying on inadmissible evidence (see below) in serious custody and visitation issues in this case . . . in addition to denying [Saribalis] the most relevant discovery in this case." For this argument, he relies almost entirely on documents that he fails to establish were submitted or considered regarding Kenney's sanctions request. We therefore will not consider them, and as a result he fails to carry his appellate burden of affirmatively showing error. (*Reserve Insurance Co.*, *supra*, 30 Cal.3d at p. 813; *California Native Plant Society*, *supra*, 172 Cal.App.4th at p. 626.)

21

Also, Saribalis does not cite legal authority for his contention. He cites to his evidentiary objections to evidence Kenney submitted with her sanctions request, but fails to mention that the family court ruled on these objections, or to argue for why the court erred in those rulings. This is another reason for our rejection of this argument. (*Falcone & Fyke I, supra*, 164 Cal.App.4th at p. 830.)

### b. *Saribalis's abandonment of two appeals*

Saribalis argues the family court erred in finding his abandonment of two appeals was sanctionable conduct. We reject this argument because Saribalis relies on documents and offers reasons for these actions that he does not establish were submitted or considered regarding Kenney's sanctions request. We will not consider them, and here too we conclude he does not meet his burden of affirmatively showing error. (*Reserve Insurance Co., supra*, 30 Cal.3d at p. 813; *California Native Plant Society, supra*, 172 Cal.App.4th at p. 626.)

### c. *Saribalis's Conduct Regarding the Child Custody Evaluations*

Saribalis next argues the family court erred in finding sanctionable his refusals to give his consent to the first child custody evaluation and to the child custody evaluator interviewing daughter's teacher and therapist for the second child custody evaluation. He again bases his arguments on documents that he fails to establish were submitted or considered regarding Kenney's sanctions request, and for factual reasons he fails to support with proper evidence. We reject this argument. (*Reserve Insurance Co., supra*, 30 Cal.3d at p. 813; *Center for Biological Diversity, supra*, 232 Cal.App.4th at p. 948; *California Native Plant Society, supra*, 172 Cal.App.4th at p. 626.)

Saribalis also argues as part of his abuse of discretion argument that Kenney did not show she incurred added attorney fees as a result of his conduct. But she was not required to do so. (*In re Marriage of Corona,*

*supra*, 172 Cal.App.4th at pp. 1226–1227; *Sagonowsky*, *supra*, 6 Cal.App.5th at pp. 1155–1156.)  In her income and expense statement that she submitted in support of her sanctions request, Kenney, who was represented by counsel, stated she had already paid her attorneys $418,760, and still owed them $136,837.  The court could reasonably conclude that sanctions for Saribalis's refusals was tethered, meaning had a relationship to, Kenney's attorney fees and costs, which was all that was required.  (*Menezes v. McDaniel*, *supra*, 44 Cal.App.5th at pp. 350–351; *Sagonowsky*, *supra*, 6 Cal.5th at p. 1153, fn. 9.)

### d. *McCarthy's sending of ex parte letters to the child custody evaluator in violation of the family court's order*

Next, Saribalis contends the family court erred in finding sanctionable his attorney McCarthy's ex parte letters to the child custody evaluator in violation of the court's order.  According to Saribalis, there is no showing that counsel had "extensive communication" with the evaluator, as he claims there was only one communication, which was a "slip."

But the evidence submitted by Kenney below in support of her sanctions request, although not clear, indicates two improper communications, one Kenney describes in her declaration as an email to the evaluator "stating that Joe does not do drugs and then admitting that Joe does do drugs," and one McCarthy stated at a hearing was a contact to ask a "question about the fee agreement."  We must view the evidence in the light most favorable to Kenney.  (*Flinner*, *supra*, 10 Cal.5th at p. 748.)  We thus reject Saribalis's contention that his attorney committed only one "slip" and therefore sanctions were not merited.

Saribalis further asserts that the family court assumed his purported one communication was not in willful defiance of the court's order, citing a 2022 court minute order.  He does not establish this order was submitted or

considered regarding Kenney's sanctions request and, as a result, does not affirmatively show error. We reject this argument as well. (*Reserve Insurance Co.*, *supra*, 30 Cal.3d at p. 813; *California Native Plant Society*, *supra*, 172 Cal.App.4th at p. 626.)

Finally, Saribalis asserts there is no evidence that "Father" (we assume he means McCarthy) ever communicated with Dr. Pickar without copying Kenney's counsel. Because Saribalis fails to explain why this matters in light of the court's conclusion that he violated the court's order, we disregard his claim of error here. (*Falcone & Fyke I*, *supra*, 164 Cal.App.4th at p. 830.)

### e. *Saribalis's violation of the court's order against discovery from collateral witnesses the child custody evaluator planned to interview*

Saribalis next argues the court erred in finding his violation of its order against seeking discovery from collateral witnesses whom the child custody evaluator planned to interview was sanctionable because (1) he had the right to seek discovery under Family Code section 3025; (2) issuing subpoenas is not witness intimidation nor a "violation of the integrity of the [child custody evaluation] process"; (3) he did not " 'repeatedly' " violate the court's order; (4) no law prohibits discovery while a child custody evaluation is pending; and (5) it was "temporally impossible for [Saribalis] to violate a stay on discovery entered on April 4, 2022 when he requested documents . . . and later issued subpoenas for documents no later than March 14, 2022."

Saribalis makes only conclusory arguments regarding the first four of these reasons and, therefore, we reject them. (*Falcone & Fyke I*, *supra*, 164 Cal.App.4th at p. 830.) He supports his fifth reason with citation to documents that he does not establish were submitted or considered regarding Kenney's sanctions request and, therefore, we reject it as well.

24

(*Reserve Insurance Co.*, *supra*, 30 Cal.3d at p. 813; *California Native Plant Society*, *supra*, 172 Cal.App.4th at p. 626.)

> f. *McCarthy's ex parte communications with the family court regarding matters under submission*

Saribalis argues the family court erred by finding six ex parte communications by McCarthy to the court regarding matters the parties had already submitted for decision was sanctionable. He contends "[n]o admissible record evidence supports a 'finding' that [Saribalis's] counsel ever communicated with the court without also copying [Kenney's] counsel." We reject this claim of error for four reasons.

First, Saribalis argues the family court improperly relied on Kenney's interpretations of the communications in her declaration, which he contends is "not admissible evidence," rather than the writing themselves (which Kenney did not submit to the court). Here again, Saribalis makes a conclusory argument without citation to legal authority. We reject it as legally and factually unsupported. (*Falcone & Fyke I*, *supra*, 164 Cal.App.4th at p. 830.)

Second, Kenney stated in her declaration in support of her sanctions request that McCarthy had engaged in numerous "ex parte communications" with the court regarding matters under submission, including to offer information not previously presented. Saribalis does not indicate he offered anything below to challenge this substantial evidence.

Third, Saribalis provides no legal authority for his apparent argument that a communication with the court outside of the normal motion and hearing process cannot be considered "ex parte" if opposing counsel is sent a copy of this communication. (*Falcone & Fyke I*, *supra*, 164 Cal.App.4th at p. 830.)

Fourth, whether or not these communications technically were "ex parte" misses the point; the court found them sanctionable in that they "frustrated the policy of the law to promote settlement of litigation and to cooperate to reduce the cost of litigation." Saribalis gives us no reason to second-guess the court's conclusion.

### g. *Saribalis's misconduct regarding daughter's therapy*

Saribalis also argues the family court erred in finding he engaged in sanctionable conduct by causing a Dr. Heller to decline to provide therapy to daughter, contending it is not supported by the record and that the court had previously indicated "that the parties blamed each other." He relies for both arguments on documents we will not consider because he does not establish they were submitted or considered regarding Kenney's sanctions request and, therefore, he has failed to meet his burden of affirmatively showing error. (*Reserve Insurance Co.*, *supra*, 30 Cal.3d at p. 813; *California Native Plant Society*, *supra*, 172 Cal.App.4th at p. 626.)

Saribalis also argues the family court erred in finding he engaged in sanctionable conduct by injecting himself into daughter's therapeutic process with therapist Meredith Simpson, which the court found was inappropriate because he did not have legal custody of daughter. He contends "[n]o substantial evidence, or any evidence, was proffered to shed light on this vague allegation to support sanctions."

The evidence is to the contrary. Kenney's declaration in support of her sanctions request and her reply declaration state that Saribalis engaged in aggressive behavior towards Simpson, some of which caused Kenney to file a motion to quash to protect Simpson from being entangled in the proceedings. Saribalis does not explain why this evidence is insufficient, thereby failing to meet his burden of affirmatively showing error. (*California Native Plant Society*, *supra*, 172 Cal.App.4th at p. 626; *Center for Biological Diversity*,

26

*supra*, 232 Cal.App.4th at p. 948.) Instead, he apparently expects us to reweigh the evidence on appeal and find for him.

> h. *McCarthy's bullying cross-examination of Emma's teacher*

According to Saribalis, the record does not support the family court's finding that Emma's teacher cried at the November 2022 evidentiary hearing as a result of his counsel McCarthy's bullying of her. He also notes the family court did not admonish McCarthy, from which, he contends, it can be inferred that "whatever triggered [the teacher] to cry was not significant enough to be reflected on the record."

Here, too, Saribalis fails to grapple with evidence to the contrary. Kenney's attorney stated in her declaration in support of Kenney's sanctions request that "[d]uring the November 2022 trial, Respondent's attorney cross-examined . . . Emma's teacher . . . with such aggression that [the teacher] was reduced to tears." Because substantial evidence supports the family court's finding on this issue, we need go no further.

Saribalis also argues his counsel's cross-examination of the teacher, who Saribalis claims was "the single-most significant witness" at that evidentiary hearing, and whom his counsel was not allowed to depose beforehand, "is not a proper basis for 271 sanctions." He asserts this in a conclusory argument, citing only a document we will not consider because he does not establish it was submitted or considered regarding Kenney's sanctions request and, therefore, he does not meet his burden of affirmatively showing error. (*Falcone & Fyke I*, *supra*, 164 Cal.App.4th at p. 830; *Reserve Insurance Co.*, *supra*, 30 Cal.3d at p. 813; *California Native Plant Society*, *supra*, 172 Cal.App.4th at p. 626.)

> i. *Saribalis's frivolous visitation and custody change requests*

Saribalis next argues the family court should not have found some of his visitation and custody change requests were "frivolous" and, therefore,

27

sanctionable conduct, because the record does not support that conclusion, as it is "replete with [Kenney's] refusal to cooperate with visitation scheduling." Here, too, his argument is based on documents we will not consider because he does not establish they were submitted or considered regarding Kenney's sanctions request (he cites only one that was before the court, Kenney's declaration, for a minor point) and, therefore, he has failed to meet his burden of affirmatively showing error. (*Reserve Insurance Co.*, *supra*, 30 Cal.3d at p. 813; *California Native Plant Society*, *supra*, 172 Cal.App.4th at p. 626.)

> j. *McCarthy's pursuit of discovery after close of evidence*

Saribalis also contends the family court should not have found McCarthy's pursuit of discovery after evidence closed in the November 2022 evidentiary hearing was sanctionable. He argues the matters were not moot but, once more, he bases such arguments on documents we will not consider because he does not establish they were submitted or considered regarding Kenney's sanctions request and, therefore, he has failed to meet his burden of affirmatively showing error. (*Reserve Insurance Co.*, *supra*, 30 Cal.3d at p. 813; *California Native Plant Society*, *supra*, 172 Cal.App.4th at p. 626.)

> k. *McCarthy's efforts to depose Dr. Friedlander against the court's order*

The court found sanctionable McCarthy's repeated requests for an order to depose the court-appointed co-parent counsellor, Dr. Friedlander. Saribalis contends this was not sanctionable conduct based entirely on his interpretation of documents that he does not establish were submitted or considered regarding Kenney's sanctions request. Here, again, we will not consider such materials (*Reserve Insurance Co.*, *supra*, 30 Cal.3d at p. 813), and as a result Saribalis does not meet his burden of affirmatively showing error. (*California Native Plant Society*, *supra*, 172 Cal.App.4th at p. 626.)

28

*l. McCarthy's insistence that Kenney communicate with Saribalis through her*

Saribalis contends McCarthy's insistence since 2020 that Kenney communicate with Saribalis through McCarthy rather than directly was not sanctionable because it was "completely reasonable" for Saribalis to "protect himself from [Kenney's] uncalled for belligerent conduct." He bases this argument on two unpersuasive points.

First, he contends Kenney did not present any evidence that this request caused over-involvement of counsel or increased fees. But she was not required to do so. The court could reasonably conclude that sanctions for McCarthy's insistence were tethered, meaning had a relationship to, Kenney's attorney fees and costs, which was all that was required. (*Menezes v. McDaniel*, *supra*, 44 Cal.App.5th at pp. 350–351; *Sagonowsky*, *supra*, 6 Cal.5th at p. 1153, fn. 9.)

Second, Saribalis again relies on his interpretation of documents that we will not consider because he does not establish they were submitted or considered regarding Kenney's sanctions request and, therefore he has not met his burden of affirmatively showing error. (*Reserve Insurance Co.*, *supra*, 30 Cal.3d at p. 813; *California Native Plant Society*, *supra*, 172 Cal.App.4th at p. 626.)

*m. The family court's finding of an overall pattern of behavior by Saribalis that was sanctionable*

Saribalis argues there was insufficient evidence of a pattern of behavior by him that was sanctionable. He contends the court's reference to certain statements by him showing a difficult attitude indicates the court was sanctioning him for thoughts rather than behavior, that the court took comments out of context from larger statements by him, and that he had

good reason to be "a bit nervous" around Kenney because of her past conduct. These arguments are unpersuasive for multiple reasons.

The family court cited specific statements by Saribalis as indications of an attitude he expressed repeatedly, which is substantial evidence of belligerent behavior. We see no indication that the court abused its discretion in its characterization of Saribalis's comments. As indicated by our review of the court's other findings above, the court's findings are consistent with findings it made with respect to a variety of other conduct. So we have no reason to second-guess its reference to a "pattern" of sanctionable conduct.

### n. The court's other comments

Saribalis argues "no evidence in the record" supports the family court's statement that credible evidence in the record indicates McCarthy regularly helped Saribalis draft certain aggressive communications to Kenney, the child custody evaluator, and third parties, and that he should not be required to prove a vaguely stated negative made by the court.

It is of no consequence whether the court's contention about McCarthy's help is supported by substantial evidence because, whether or not she helped, Saribalis's *aggressive communications* themselves provide ample support for the sanctions ordered, and we have already discussed substantial evidence that Saribalis and/or McCarthy engaged in such communications.

Finally, Saribalis contends the family court erred in referring to certain comments by McCarthy at the hearing on sanctions to support its order because these comments did not indicate anything about Saribalis to support sanctions. We disagree. The court could reasonably infer from McCarthy's comment that Saribalis only ever wanted more time with daughter that Saribalis was not sufficiently focused on daughter's best

interests as reflected in determinations the court made in its custody and visitation orders. It could also reasonably conclude counsel's comment that Saribalis had changed his behavior since the last custody order was in effect an admission that he had previously engaged in inappropriate behavior.

### o. *Saribalis's other arguments*

As we have indicated, Saribalis argues that the family court disregarded that Kenney "failed to make any showing whatsoever of any purported 'added' fees due to any conduct by [Saribalis]," and improperly awarded Kenney a double recovery by including discovery sanctions and attorney fees she relinquished in the settlement agreement incorporated into the 2017 judgment.

As for attorney fees, Saribalis ignores the substantial evidence contained in Kenney's declaration in support of her sanctions request. "I have spent an inordinate amount of money on legal fees and costs," she stated, "defending against the false accusations and litigious conduct of Ms. McCarthy and [Saribalis]." And we have already summarized her income and expense declaration's accounting of her extensive attorney fees and costs, which at the time of her request exceeded $550,000. Kenney was not required to show anything further. (*Menezes v. McDaniel*, *supra*, 44 Cal.App.5th at pp. 350–351; *Sagonowsky*, *supra*, 6 Cal.5th at p. 1153, fn. 9.)

As for his "double recovery" theory, Kenney makes no reasoned argument and does not cite any legal authority that shows the family court could not sanction him under section 271 for conduct related to Kenney's relinquishment of fees in a settlement agreement and this is not self-evident. We therefore disregard it. (*Falcone & Fyke I*, *supra*, 164 Cal.App.4th at p. 830.)

31

*p. Kenney's conduct*

Finally, Saribalis argues the family court abused its discretion by characterizing Kenney's behavior as minor to explain its award of section 271 sanctions, detailing various acts by her in 2016 and 2017 to show the court's characterization was wrong. Saribalis cites documents and makes contentions we will not consider because he does not establish they were submitted or considered regarding Kenney's sanctions request and, therefore, he fails to affirmatively show error. (*Reserve Insurance Co.*, *supra*, 30 Cal.3d at p. 813; *California Native Plant Society*, *supra*, 172 Cal.App.4th at p. 626.)

But regardless of the insufficiency of Saribalis's showing, he ignores that the family court awarded Kenney only $100,000 of the $300,000 in sanctions she requested based on her misconduct. Saribalis offers nothing to explain why the court abused its discretion in ordering this reduced amount of sanctions based at least in part on Kenney's misconduct. We therefore reject his argument. (*Falcone & Fyke I*, *supra*, 164 Cal.App.4th at p. 830; *California Native Plant Society*, *supra*, 172 Cal.App.4th at p. 626.)

## D. *The Court's Section 271 Findings Regarding Saribalis's Ability to Pay the Sanctions Award*

Saribalis argues the family court abused its discretion by failing to properly consider the financial burden its sanctions award would place on him. He contends his income and expenses statement shows "that he is barely making ends meet, and most certainly, is not able to pay the sanctions awarded by the trial court."

Kenney responds that the court expressly recognized it could not order an award that imposed an unreasonable financial burden on Saribalis, and properly found its award did not because he had a well-paying job, owned real estate, and received significant financial help from relatives.

32

We conclude the court did not abuse its discretion because there is substantial evidence that Saribalis could afford to pay the sanctions ordered.

### 1. Proceedings Below

As part of his opposition to Kenney's sanctions request, Saribalis submitted an income and expense declaration in which he declared that he worked full-time as an elevator mechanic, received an average gross salary of $10,680 per month, and had only negligible interest income. He estimated that Kenney's gross monthly income was $16,565.09.

Saribalis also listed cash assets totaling $5,540; stocks, bonds, and other assets he could easily sell totaling $5,872; and a real property interest worth a fair market value, minus debts, of $39,600. He also listed a "lien-transfer" of real property to another family member, apparently his brother, of $90,400.

Saribalis listed various average monthly expenses totaling $8,017. These expenses were for such things as rent ($1,700), eating out ($2,400), automobile expenses and transportation ($2,142), and various other items. He also stated he made payments the previous month of $331 in required union dues, $400 in health insurance premiums, and $90 in necessary job-related expenses not reimbursed by his employer. In addition, he had monthly expenses of $280 for his daughter's health care, his travel expenses for visitation, and his daughter's "educational or other special needs."

Saribalis further declared that he paid, in January 2022, $500 on credit card debt totaling $17,105 and, in December 2023, $362 on a $20,000 loan from a family member, apparently his father. He further declared that he had paid his attorney approximately $176,000 in fees and costs using

33

"loans from family, transfer interest Briarwood (the real property), pay from salary, [and] savings," and that he owed his attorney another $86,000.[7]

Certified public accountant Robert Sewall also filed a declaration in support of Saribalis's opposition. Sewell stated he had "reviewed the information on [Saribalis's] Income and Expense Declaration and it is consistent with his prior submissions [to Sewell] and the now-inflated costs for everything, but particularly gas and tolls and car repairs in view of his very long daily commute for work." Sewell added that Saribalis "has no financial cushion or savings. He has never received income from the Briarwood property as all funds generated are used for maintenance and to pay mortgage costs and a debt to his father. That has been consistent for the entire time I have done his tax returns, over 6 years. That property is co-owned by his brother . . . ."

Kenney submitted her own income and expense declaration in support of her sanctions request. She stated that she worked full-time as a school director, earning a gross salary of $10,500 a month, and had cash assets of $45,000. Kenney estimated Saribalis's gross monthly income as $166,667, though it appears from the circumstances that she meant this was a yearly amount.

---

[7] Saribalis also represents briefly in his reply brief that he makes a $904 monthly child support payment, presumably to Kenney, but acknowledges that he did not include any such payment obligation in his income and expense declaration below. And as we have discussed above, Saribalis, in opposing Kenney's motion to dismiss this appeal, made some additional representations about his financial circumstances, including his payment of child support. We shall not consider any of these representations in reviewing the family court's affordability analysis because Saribalis does not show he made them below regarding Kenney's sanctions request. (*Reserve Insurance Co.*, *supra*, 30 Cal.3d at p. 813.)

Kenney declared that she paid $550 a month in health insurance premiums and otherwise had monthly expenses averaging $11,700. She made periodic payments on credit card debt of $12,000; attorney fees owed of $136,837; and a car, on which she owed $4,500. She had already paid attorneys working on her case $418,760, and still owed them $136,837.

In its written ruling ordering sanctions, the family court considered and rejected Saribalis's contention that he could not afford to pay them. The court found that he had "a well-paying union job and apparently owns real estate. . . . [H]e claims he has paid Ms. McCarthy $176,000 and owes her $86,000. His [income and expense declaration] . . . reveals over $100,000 in transactions with his relatives, which suggests that his family is helping to finance this litigation."

### 2. Legal Standards

Section 271 requires the court to "take into consideration all evidence concerning the parties' incomes, assets, and liabilities," and prohibits it from imposing a sanction "that imposes an unreasonable financial burden on the party against whom the sanction is imposed." (§ 271, subd. (a).) "[T]he sanction must be scaled to the payor's ability to pay and must be made in light of both parties' financial circumstances." (*Falcone & Fyke I*, *supra*, 164 Cal.App.4th at p. 828; *Burkle v. Burkle* (2006) 144 Cal.App.4th 387, 403 ["the only stricture imposed by section 271 is that the sanction may not impose 'an unreasonable financial burden' on the party sanctioned"].) "An award of attorney's fees and costs as a sanction pursuant to this section is payable only from the property or income of the party against whom the sanction is imposed" (other than from a share in community property). (§ 271, subd. (c).)

As we have discussed, we review the sanctions order for abuse of discretion. (*In re Marriage of Feldman*, *supra*, 153 Cal.App.4th at p. 1478.)

35

We determine " ' " 'whether, after viewing the evidence in the light most favorable to the [moving party], any rational trier of fact could have found [in favor of the order].' [Citations.] We examine the record to determine 'whether it shows evidence that is reasonable, credible and of solid value from which a rational trier of fact could find [in support of the order].' " ' " (*Flinner, supra*, 10 Cal.5th at p. 748.) Also, we " ' " 'presume[] in support of the [order] the existence of every fact the trier could reasonably deduce from the evidence.' " ' " (*Ibid.*)

### 3. Analysis

Neither party cites a case in which an appellate court determined a family court erred in ruling that a party could afford to pay a section 271 sanctions award, nor have we found one in our independent research. Nonetheless, case law instructs that our analysis should focus on whether a party has the "ability to pay" the award. (*Falcone & Fyke I*, *supra*, 164 Cal.App.4th at p. 828; see also *In re Marriage of Fong* (2011) 193 Cal.App.4th 278, 292 [rejecting contention that the family court failed to consider appellant's ability to pay section 271 sanctions given the evidence submitted of his considerable assets].)

Similar to his sanctionable conduct arguments, Saribalis contends the evidence shows he clearly cannot afford to pay the sanctions awarded in part based on documents in the court file and the appellant's appendix but which he does not show were submitted or considered regarding Kenney's sanctions request. We will disregard arguments based on these documents. (*Reserve Insurance Co.*, *supra*, 30 Cal.3d at p. 813.)

Saribalis's overall argument is unpersuasive because he merely contends in a conclusory manner that his income and expense statement and his declaration make clear that he is "barely making ends meet, and most certainly, is not able to pay the sanctions awarded," and that requiring him

36

to pay would require that he "forego a roof over his head, food, insurance" and the like. He correctly points out that other cases in which similar-sized sanctions were imposed involved parties with greater resources than his own (see *In re Marriage of Fong, supra,* 193 Cal.App.4th 278; *In re Marriage of Davenport* (2011) 194 Cal.App.4th 1507; *Sagonowsky, supra,* 6 Cal.App.5th 1142), but, again, our focus is on whether *he* can afford to pay the sanctions imposed. To that end, he again ignores his burden to address the substantial evidence *supporting* the family court's order. Again, he must "*affirmatively show* there was no substantial evidence in the record" and not just argue what favors his position. (*California Native Plant Society, supra,* 172 Cal.App.4th at p. 626; *Center for Biological Diversity, supra,* 232 Cal.App.4th at p. 948.) His failure to address this substantial evidence is further reason to reject his arguments.

Given our deferential standard of review, the presumption we must apply and the reasonable inferences we must draw in favor of the court's order, and viewing the evidence in the light most favorable to that order, we conclude the record shows the family court properly considered whether Saribalis could afford the sanctions ordered and that its sanctions order is supported by substantial evidence. The court expressly stated it had considered Saribalis's ability to pay, and we may reasonably refer from its reference to the money he had paid to, and owed, his attorney McCarthy that it reviewed Saribalis's income and expense statement and his declaration. Saribalis fails to cite any legal authority indicating the court was required to state any more findings than it did and we are not aware of any. It is of no moment that we might have arrived at a different ability to pay determination. We might have, but our review of *the family court's*

*determination* is for abuse of discretion. We are not looking at this issue de novo.

The evidence presented is enough for a rational fact finder to conclude Saribalis could pay sanctions of $5,000 a month for 20 months. Saribalis's income and expense statement indicates he has financial resources in cash, fungible stocks and bonds, and real property valued at about $50,000. He further represented that he made a "lien-transfer" of a portion of his interest in this same real property to his brother in return for $90,000, from which it can be reasonably inferred that he would be able to transfer the remainder of his property interest as well. In other words, without drawing at all from the substantial regular salary income he receives, he presently has the financial resources to pay Kenney $2,500 a month. Saribalis may argue that he needs these resources to pay his other debts, but he did not submit anything below demonstrating that is the case.

Moreover, his argument presumes that the family court believed the representations he made about his financial resources were accurate. The court had no obligation to do so (e.g., *In re Lopez* (2023) 14 Cal.5th 562, 591 ["It is well settled that [a fact finder] has wide latitude to believe or disbelieve witnesses . . . as it sees fit"]) and its order suggests skepticism. It could reasonably infer from substantial evidence that Saribalis had more resources available to him than what he represented. For example, his income and expense statement states that he spends $2,400 a month "eating out," or approximately $28,800 a year, a large amount for one individual by any measure. While Saribalis theoretically could have contended below that his cooking skills or time limits made this expenditure necessary, he does not indicate that he did so.

Further support for the court's skepticism is that Saribalis's accounting of his gross income and monthly expenses does not add up. As stated, it indicates he has a *gross* monthly income of $10,680 dollars and monthly expenses of at least $9,100. This suggests that every month he is spending many hundreds, if not thousands more than his likely *net* income—while continuing to liberally eat out regardless. In addition, as the court noted, Saribalis represented that he had been able to pay his attorney McCarthy $176,000 and had taken on the obligation of paying her an additional $86,000. It can be reasonably inferred from this too that Saribalis has more financial resources than what he disclosed.

The family court could reasonably infer from Saribalis's obtaining of a $20,000 loan from his father and apparent transfer of a real property interest to his brother for $90,000, thereby helping him to finance the litigation, that he had additional financial resources. Saribalis might argue that he is in fact indebted to his father and/or brother for money already spent, but once again, he submitted no evidence of this other than indicating he made one repayment of $362 to his father in December 2023. Saribalis does not indicate he disclosed any of the terms and conditions of these transactions (or about his credit card debt) in his opposition below.

For example, it may be that he has already spent all of the money he obtained in these family transactions or, on the other hand, that his father and brother make money available to him as needed and that substantial amounts have yet to be transferred to him. It may be that he is obligated to make regular payments for any money borrowed, or it may be that there are no such requirements, and the time he has been afforded for any required repayments is open-ended. Given Saribalis's burden of affirmatively showing error on appeal our deferential standard of review, and that we

39

must view the evidence in the light most favorable to the court's order (*Flinner*, *supra*, 10 Cal.5th at p. 748), we have no obligation to draw inferences regarding the terms and conditions of these transactions in Saribalis's favor. Quite to the contrary, the inferences we draw must be in favor of the family court's findings.

Finally, we observe that the family court's order clearly did take the ability to pay issue into account to some extent, since it imposed only one third of the requested award and did not require Saribalis to pay one lump sum (instead giving him a 20-month payment schedule). Having so noted, to be sure, we are not unsympathetic to Saribalis's claims of impecuniousness. If he believes the amount of his monthly payment obligation places an unreasonable financial burden on him, we see no reason why, accompanied by an appropriate showing of just cause, he cannot seek modification of the sanctions order to reduce the amount of his monthly payments, even if this may increase the number of payments he is required to make over time.

## III. DISPOSITION

The order appealed from is affirmed. Kenney is awarded costs of appeal.

STREETER, J.

WE CONCUR:

BROWN, P. J.
MOORMAN, J.[*]

---

[*] Judge of the Mendocino Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.